

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00102-CR

QUADREUY FLOWERS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 12F1026-102

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

Dusty Duckett, the girlfriend of Quadreuy Flowers, was in bed with Darius Carter when a man entered the bedroom and fatally shot Carter. Flowers was convicted of Carter's murder. We affirm Flowers' conviction.

On the night of the shooting, although the only light in the bedroom was cast by the glow of the television set, Duckett identified Flowers as the murderer. At trial, Duckett testified that after Flowers had shot Carter, the gun jammed and would not fire. Flowers then struck Duckett with the gun and raged, "[B]itch, I'm going to shoot the shit out you." According to Duckett's trial testimony, Flowers then chased Duckett to the nearby apartment of McGraw. Jessica McGraw, who knew Flowers from high school, testified that she saw Flowers chasing Duckett and that Duckett had taken refuge from him in her apartment.

When interviewed by the police, Flowers claimed he was with Tevin Willis at the time of the murder. Detective Kimberly Weaver asked Flowers, "[S]o do you mind if we go through your phone to get his number?" to which Flowers replied, "Oh no, it's saved under 'T-Will.'" The police, though, did not limit their search of the data on Flowers' cell phone to obtaining Willis' telephone number; rather, they accessed, reviewed, and photographed Flowers' telephone call history as well. At trial, the State introduced a series of screenshots of Flowers' cell phone's call log, which revealed that Flowers had used his cell phone to call Willis at a time that Flowers said they were together. Willis testified at trial that Flowers was not with him at the time of the murder and that Flowers had confessed in a telephone conversation with Willis that he had, indeed, killed Carter.

On the morning of trial, but before trial began, the trial court addressed some preliminary issues outside the presence of the jury regarding the police's video-recorded interrogation of Flowers. At that time, Flowers objected to the introduction of certain anticipated evidence against him. Flowers argued that the scope of the permission he had given to the police regarding the data on his cell phone was limited to obtaining Willis' telephone number. Flowers argued that the police exceeded the scope of the permission by reviewing the phone calls made on that cell phone and photographing his call history list. The trial court overruled Flowers' pretrial objection and overruled his renewed objection when the State attempted to introduce the photographs of the call history list at trial. The trial court did grant Flowers a running objection to information gleaned from the search of his cell phone.

Flowers also complains of the ruling of the trial court pertaining to certain impeachment evidence Flowers proposed to introduce. Flowers attempted to impeach Duckett by introducing evidence of what he claimed was a prior inconsistent statement made by her. At a hearing conducted outside the presence of the jury, Kelisha Aubrey testified that Duckett had made a prior statement that there were no arguments between her and Flowers, that Flowers had not chased her from the scene of the shooting to McGraw's apartment, and that Duckett "didn't hear nothing." The trial court sustained the State's objection to the prior inconsistent statement.

The jury found Flowers guilty and assessed his punishment at ninety-nine years' imprisonment with a $10,000.00 fine. The trial court sentenced Flowers consistent with the jury's assessment and ordered him to pay $249.00 in court costs as well.

On appeal, Flowers raises three issues. Flowers claims the trial court erred in denying his attempt to impeach Duckett with what he claims was a prior inconsistent statement. Second, Flowers argues the search of his cell phone exceeded the scope of his consent and should have been excluded. Third, Flowers complains that the record fails to contain sufficient evidence to support the award of court costs.

## I.    The Trial Court Did Not Abuse its Discretion in Excluding the Alleged Prior Inconsistent Statement

In his first point of error, Flowers argues that the trial court erred in excluding Duckett's prior inconsistent statement.[1] Flowers argues that the proper foundation was laid for the introduction of Duckett's statement, saying that if the evidence of the prior inconsistent statement had been permitted, the State could have requested a limiting instruction for the jury not to consider the statement for the truth of the matter asserted. The State makes a two-fold response; it first alleges that Flowers failed to lay the proper predicate for introduction of the testimony and then it maintains that if the trial court erred in excluding the testimony, any such error was harmless.

On cross-examination of Duckett, Flowers began to lay the foundation to impeach her with a prior inconsistent statement. Duckett said she "did not remember" stating in the presence

---

[1]Although Flowers' stated issue on appeal only raises a constitutional challenge, the substance of Flowers' brief alleges violations of both the Texas Rules of Evidence and the Confrontation Clause of the United States Constitution. The brief specifically argues Rule 613 was violated. *See* TEX. R. EVID. 613. The State interpreted Flowers' argument as challenging the Texas Rules of Evidence as well and briefed that issue. Since the substance of Flowers' brief, including any subsidiary questions fairly included, determines what error is assigned for our review, we conclude both statutory and constitutional arguments have been assigned for our review. *See State v. Bailey*, 201 S.W.3d 739, 743–44 (Tex. Crim. App. 2006). Although this point of error is multifarious, we decline to exercise our discretion to dismiss the issue on that basis. *See* TEX. R. APP. P. 38.1; *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010). The best practice, though, would be to raise separate issues on the statutory and constitutional issues and to brief the statutory and constitutional issues separately.

4

of Aubrey on November 14, 2013, while at the Bi-State Justice Building, that "Jessica McGraw was a liar, she wasn't there, Quadreuy walked -- you said Quadreuy walked into the house, didn't say anything, fired a shot, and simply left, there was no argument, no fighting or anything, and just walked out." Duckett also testified that she did not remember stating in the same conversation that Flowers kicked in the door.

Flowers later called Aubrey, who testified outside the presence of the jury that she overheard the following conversation between Duckett, "Sawaya[,] and Theresa" at the Bi-State Justice Building on November 14, 2013:

> What she said is she told Theresa, she said, I'm going to tell you what happened, and she was very irate. She said, I was asleep. Me and D. C. was asleep. Quadreuy kicked the door in. He came in, shot D. C., and left. And that's when Sawaya and I, I also, I said, so, you know, there was no argument, and Jessica didn't see you, you didn't run to Jessica's apartment. She said, no, Jessica is a liar, there was no arguments, I was asleep, he kicked in the door, shot D. C. and left. And also she said she didn't hear nothing. Jessica was a liar, Jessica didn't know anything.

Flowers informed the trial court he was not seeking admission of the statement for "the truth of the matter asserted," but only for the purpose of impeachment. The State pointed out that Duckett did not deny having made the statement, but merely stated that she did not "remember" having made it. Flowers later stated, "This witness is being called to rebut the fabricated tales that Ms. McGraw has told." The State further argued that the statement was hearsay, that the proper foundation had not been laid, and that the statement constituted "totally improper impeachment for Jessica McGraw." Flowers clarified,

> There are two separate arguments. It is an inconsistent statement of Ms. Duckett. For Ms. McGraw, it's simply a rebuttal witness that has heard a statement that is

5

relevant, and it's not hearsay, because it's not offered for the truth of the matter asserted.

The trial court expressed some doubts as to whether the proper predicate had been laid for this testimony. Flowers re-called Duckett outside the presence of the jury, and she testified that the statement made by Aubrey, "was false, that was not true." After making two more assertions of the falsity of the statement, the following colloquy occurred:

> Q. . . . . you didn't say it?
> A. No, sir, I didn't.
> Q. Not on November 14th at approximately 2:30 in the afternoon?
> A. No, sir, I didn't.

Duckett repeatedly denied having made the statement. The trial court sustained the State's objection and rejected Flowers' request to re-call Duckett to finish laying the predicate in front of the jury. Thus, we must consider whether Flowers laid the proper foundation or predicate under Rule 613(a) of the Texas Rules of Evidence.

## A. Flowers Failed to Lay the Proper Predicate

Flowers argues on appeal that the statement was admissible as a prior inconsistent statement to impeach Duckett.[2] The State responds that Flowers failed to lay the proper foundation and that the statement is not inconsistent with Flowers' trial testimony.[3] The State argues that Flowers failed to lay the proper foundation because he failed to inform Duckett of the identity of the person to whom she had allegedly made the statement.

---

[2]Flowers does not argue, on appeal, that the statement is admissible to impeach McGraw.

[3]The State argues that the statement is not inconsistent because Duckett did not testify that McGraw was present when Carter was shot. Regardless of how one interprets the "she wasn't there" phrase, the statement is inconsistent with Duckett's testimony. The statement that Flowers "kicked in the door, shot D. C. and left" suggests Flowers did not hit Duckett with the gun, verbally threaten Duckett, or chase Duckett to McGraw's apartment.

6

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). Abuse of discretion occurs only if the decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). We may not substitute our own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Rule 613(a) of the Texas Rules of Evidence imposes three requirements to establish the proper predicate or foundation for impeachment testimony: (1) identification ("the time and place and the person to whom [the statement] was made"), (2) "the contents of such statement," and (3) the witness "must be afforded an opportunity to explain or deny such statement." TEX. R. EVID. 613(a); *see Ellingsworth v. State*, 487 S.W.2d 108, 112 (Tex. Crim. App. 1972); *Osteen v. State*, 61 S.W.3d 90, 91 (Tex. App.—Waco 2001, no pet.). The plain language of Rule 613(a) does not require the witness to deny the statement, it only provides that extraneous evidence may not be admitted if "the witness unequivocally admits having made such statement." TEX. R. EVID. 613(a). The Texas Court of Criminal Appeals has observed that "[w]here the admission is only qualified or partial and not unequivocal[,] the statement may be used to impeach him." *McGary v. State*, 750 S.W.2d 782, 786 n.3 (Tex. Crim. App. 1988); *see Abdygapparova v. State*, 243 S.W.3d 191, 204 (Tex. App.—San Antonio 2007, pet. ref'd); *Parson v. State*, 193 S.W.3d

7

116, 121 (Tex. App.—Texarkana 2006, pet. ref'd); *Ruth v. State*, 167 S.W.3d 560, 566 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

Rule 613(a) provides, "[T]he witness must be told . . . **the person to whom [the statement] was made** . . . ." TEX. R. EVID. 613(a) (emphasis added). If the impeaching party fails to lay a proper predicate or foundation, the prior inconsistent statement should not be admitted. *Moore v. State*, 652 S.W.2d 411, 413 (Tex. Crim. App. 1983); *Osteen v. State*, 61 S.W.3d 90, 91 (Tex. App.—Waco 2001, no pet.) (proper predicate not laid when impeaching party failed to inform witness of contents of statement). The Texas Court of Criminal Appeals has stated, "The rule of admissibility of evidence of prior inconsistent statements should be liberally construed[,] and the trial judge should have discretion to receive any evidence which gives promise of exposing a falsehood." *Aranda v. State*, 736 S.W.2d 702, 707 (Tex. Crim. App. 1987); *Joseph v. State*, 960 S.W.2d 363, 366 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd). The purpose of the foundation requirements for Rule 613(a) is to put the witness on notice as to which statements may be used to impeach her credibility. *See Joseph*, 960 S.W.2d at 366 (discussing former TEX. R. EVID. 612(a)).

Texas Courts of Appeals have afforded some latitude concerning identification of the time and place the statement was made and the identity of the person to whom it was made if it is apparent that the witness was afforded adequate notice of the statement. The El Paso Court of Appeals has held in an unpublished opinion that an explicit reference is not required if the "record is clear that [the witness] understood the questions being posed to her and she was aware of the contents of the statement and the person to whom the statement was made." *Torres v.*

8

*State*, No. 08-11-00151-CR, 2012 Tex. App. LEXIS 10055, at \*\*8–9 (Tex. App.—El Paso Dec. 5, 2012, pet. ref'd) (not designated for publication); *accord Broden v. State*, 923 S.W.2d 183, 189 (Tex. App.—Amarillo 1996, no pet.); *Perez v. State*, No. 13-08-296-CR, 2009 Tex. App. LEXIS 1437 (Tex. App.—Corpus Christi Feb. 26, 2009, pet. ref'd) (not designated for publication).

Flowers failed to specify to whom Duckett allegedly made the statement (both when questioning Duckett in front of the jury and later, at the hearing conducted outside the presence of the jury). Thus, one of Rule 613(a)'s specific requirements for a proper foundation was omitted by Flowers. Further, unlike *Torres*, the record in this case does not clearly establish that Duckett understood the questions being posed to her[4] or that she was aware of the person to whom the statement was made. Further, the conversation in dispute occurred approximately six months prior to trial. Duckett gave no indication on the record that she knew to whom she was alleged to have made the statement.[5] Thus, the exception recognized in *Torres* would not apply in this case. Without affirmative evidence in the record that Duckett knew the identity of the person to whom the statement was allegedly made, Flowers' failure to inform Duckett of that

---

[4]Duckett made what might seem to be contradictory claims. When testifying before the jury, she said that she did not remember having made the statement but outside the presence of the jury, she repeatedly said that the statement she had previously made was false. It appears that she became confused as to the question being posed. At one point, she was being asked if the facts contained in her statement were true, but at another time, she was being asked whether it was true that she had made the statement. All in all, it appears that the point Duckett was attempting to make was that she agreed that although she had made the statement, the content of her own statement was not true.

[5]The State notes the initial questioning by Flowers in front of the jury referenced "some of the differences that you told the police." The State argues Duckett may have believed Flowers was asking about statements she had made to the police. We take judicial notice that the Texarkana, Texas, Police Department and the Bowie County, Texas, Sheriff's Department have offices in the Bi-State Justice Building—the same location the prior inconsistent statement was allegedly made. The record, though, does not contain any indication that Duckett believed Flowers was discussing statements she had made to the police. As stated below, we cannot determine from the record whether Flowers identified prior statements about which Duckett was being questioned.

9

individual's identity was tantamount to a failure to lay the proper foundation for using the statement as impeachment.

The trial court did not abuse its discretion in excluding the prior inconsistent statement.

**B.      The Exclusion Did Not Violate the Confrontation Clause**

Flowers also argues that the exclusion was sufficiently egregious to constitute constitutional error.  Normally, any error in the admission of evidence is only a statutory error but, on rare occasions, such an error can be of sufficient magnitude to constitute constitutional error.  Error which "significantly undermined fundamental elements of the accused's defense" qualifies as constitutional error.  *United States v. Scheffer*, 523 U.S. 303, 315 (1998); *Davis v. Alaska*, 415 U.S. 308, 317 (1974); *see Walters v. State*, 247 S.W.3d 204, 221 (Tex. Crim. App. 2007); *Potier v. State*, 68 S.W.3d 657, 666 (Tex. Crim. App. 2002).

The United States Constitution provides, in part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. CONST. amend. VI, XIV.  The Texas Court of Criminal Appeals has observed,

> Generally, the right to present evidence and to cross-examine witnesses under the Sixth Amendment does not conflict with the corresponding rights under state evidentiary rules.  Thus, most questions concerning cross-examination may be resolved by looking to the Texas Rules of Evidence.  In those rare situations in which the applicable rule of evidence conflicts with a federal constitutional right, Rule 101(c) requires that the Constitution of the United States controls over the evidentiary rule.

*Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009) (footnote omitted); *see* TEX. R. EVID. 101; *Leza v. State*, 351 S.W.3d 344, 360 n.65 (Tex. Crim. App. 2011); *Walters*, 247 S.W.3d at 221 ("[A]n erroneous ruling excluding evidence might rise to the level of a

10

constitutional violation if it effectively prevents the defendant from presenting his defensive theory.").

The Texas Court of Criminal Appeals has recently summarized the examples of constitutional violations recognized by the United States Supreme Court as follows:

> A constitutional violation may arise only if "(1) a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence vital to his defense; or (2) a trial court's clearly erroneous ruling results in the exclusion of admissible evidence that forms the vital core of a defendant's theory of defense and effectively prevents him from presenting that defense."

*Easley v. State*, 424 S.W.3d 535, 540 (Tex. Crim. App. 2014) (quoting *Walters*, 247 S.W.3d at 219).

The error in this case lacks the magnitude necessary to arise to constitutional error. The Texas Rules of Evidence did not categorically and arbitrarily prohibit Flowers from offering otherwise relevant, reliable evidence necessary for his defense. The first circumstance is not established because the exclusion was not arbitrary and the evidence did not form a vital core of Flowers' defensive theory. It is well established that a Rule of Evidence prohibiting hearsay is not arbitrary. Further, as discussed above, the purpose of the predicate or foundation requirements of Rule 613(a) is to permit the witness to admit or explain the inconsistent statement, which reflects a nonarbitrary policy decision. Additionally, the excluded evidence did not form the vital core of Flowers' defensive theory, and the error did not prevent Flowers from presenting his theory. Flowers attacked the credibility of Duckett even without the prior inconsistent statement. The second circumstance is not established because the trial court's ruling, as discussed above, was not clearly erroneous under the Texas Rules of Evidence and did

11

not effectively prevent Flowers from presenting a defense. Therefore, there was no constitutional error.

We overrule Flowers' first issue.

## II. The Search of Flowers' Cell Phone Did Not Constitute Reversible Error

In his second issue, Flowers contends that the trial court erred in overruling his objection to the admission of evidence obtained through a search of Flowers' cell phone. Flowers argues that he has a reasonable expectation of privacy in the contents of his cell phone, that the scope of his consent to search his cell phone was limited, and that the police officers exceeded the scope of his consent when searching his cell phone. The State responds by first taking the position that the search of the cell phone was within the scope of the authority granted by Flowers and, second, that if the search of the telephone exceeded the scope of the permission granted by Flowers, admission of evidence obtained from that search was harmless error.

### A. Flowers Preserved This Issue for Appellate Review

Flowers argues that error was preserved because the trial court overruled a trial objection challenging the call history as shown on the cell phone and the trial court granted Flowers a running objection.

Although the State does not argue that Flowers failed to preserve error, we note preservation of error is systemic and must be considered, regardless of whether the issue is raised by the parties. *Gipson v. State*, 383 S.W.3d 152, 159 (Tex. Crim. App. 2012); *Menefee v. State*, 287 S.W.3d 9, 18 (Tex. Crim. App. 2009).

We conclude that error has been preserved for appellate review.

12

**B        The Search of the Cell Phone's Call Log**

The State's argument is that Flowers consented to the search of his cell phone and, thus, all of the data on it was open to search. The State concedes that the scope of consent is defined by "what an objectively reasonable person would have expected the search to entail, given the circumstances and the communication between the officer and the suspect." The disagreement centers on what an objectively reasonable person would have expected the search of Flowers' cell phone to entail.

A trial court's decision on a motion to suppress is reviewed by applying a bifurcated standard of review deferring to the trial court's determination of historical facts that depend on credibility, but reviewing de novo the trial court's application of the law. *Burke v. State*, 27 S.W.3d 651, 654 (Tex. App.—Waco 2000, pet. ref'd). The appellate court affords almost total deference to a trial court's determination of the historical facts supported by the record, especially when the trial court's fact-findings are based on an evaluation of credibility and demeanor. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The court also affords such deference to a trial court's ruling on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. The appellate court, however, conducts a de novo review of those questions not turning on credibility and demeanor. *Id*.

The record in this case contains no findings of fact.[6] When the trial court does not file findings of fact, we should assume that the trial court made implicit findings that support its ruling, so long as those implied findings are supported by the record. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000). The trial court's evidentiary ruling "will be upheld on appeal if it is correct on any theory of law that finds support in the record." *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006); *see Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

Subject to a few well-delineated exceptions, under the Fourth and Fourteenth Amendments to the United States Constitution, a search conducted without a warrant issued with probable cause is deemed per se unreasonable. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). However, the grant of the consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Id.*; *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). Consent to search must be voluntary based on a consideration of all circumstances. *Ohio v. Robinette*, 519 U.S. 33, 40 (1996). "Under Texas law, the State must prove voluntary consent by clear and convincing evidence." *State v. Weaver*, 349 S.W.3d 521, 526 (Tex. Crim. App. 2011). A voluntary decision must be "'the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *Joseph v. State*, 309 S.W.3d 20, 25 (Tex. Crim. App. 2010) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

---

[6]When the suppression issue does not involve the voluntariness of a statement, a trial court only has a duty to file findings of fact if requested by the defendant. *State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006); *see also State v. Mendoza*, 365 S.W.3d 666, 670–71 (Tex. Crim. App. 2012). We have not been directed to any location in the record where Flowers requested findings of fact. Further, Flowers does not argue that his consent was not voluntarily given.

14

The State does not contest that Flowers had a reasonable expectation of privacy in everything contained on his cell phone. The Texas Court of Criminal Appeals has recently recognized that a person has a reasonable expectation of privacy in a cell phone—even when that phone is in the possession of the jail property room. *State v. Granville*, 423 S.W.3d 399, 417 (Tex. Crim. App. 2014). The court stated, "A cell phone is unlike other containers as it can receive, store, and transmit an almost unlimited amount of private information. The potential for invasion of privacy, identity theft, or, at a minimum, public embarrassment is enormous." *Id*. Further, unauthorized access by the police to data contained on such a phone constitutes a trespass to chattels in violation of the Fourth Amendment.[7] Similar to *Greenville*, Flowers had a reasonable expectation of privacy in his cell phone, even though the police officers had possession of the phone while Flowers was being interviewed.

The United States Supreme Court has recognized that the scope of consent may be limited either "by its expressed object" or by any limitations the suspect expresses when consenting. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991); *see Simpson v. State*, 29 S.W.3d 324, 330 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *Harris v. State*, 994 S.W.2d 927, 931 (Tex. App.—Waco 1999, pet. ref'd); *see also May v. State*, 582 S.W.2d 848, 851 (Tex. Crim. App. [Panel Op.] 1979). In determining the scope of consent, we apply an objective standard of

---

[7]The United States Supreme Court recently clarified that the *Katz* reasonable expectation of privacy test merely supplements the traditional property-based understanding of the Fourth Amendment. *Florida v. Jardines*, 133 S.Ct. 1409, 1417 (2013); *United States v. Jones*, 132 S.Ct. 945, 953 (2012). In *Jones*, the United States Supreme Court recognized that the government's physical invasion, by placing a GPS tracking device on the suspects' car, was a trespass to chattels in violation of the Fourth Amendment. *Jones*, 132 S.Ct. at 953. "Trespass to chattels" is "[t]he act of committing, without lawful justification, any act of direct physical interference with a chattel possessed by another." BLACK'S LAW DICTIONARY 1643 (9th ed. 2009). Physical manipulation of Flowers' cell phone without his consent to access its call history was a trespass to chattels in violation of the Fourth Amendment.

15

what a reasonable person would have understood by the exchange between the officer and the individual. *Valtierra v. State*, 310 S.W.3d 442, 449 (Tex. Crim. App. 2010); *Vargas v. State*, 18 S.W.3d 247, 253 (Tex. App.—Waco 2000, pet. ref'd); *Harris*, 994 S.W.2d at 931.

Although permission may be granted for a general, unlimited search of the content of a cell phone, that kind of permission was neither sought nor granted here. *See Lemons v. State*, 298 S.W.3d 658, 662 (Tex. App.—Tyler 2009, pets. (2) ref'd) ("unlimited consent" to search cell phone); *Montanez v. State*, 211 S.W.3d 412, 416 (Tex. App.—Waco 2006, no pet.).[8] When the scope of consent is general, the entire place or object may be searched including any containers located within the place or object. *Valtierra*, 310 S.W.3d at 450.

The request in this case, however, was limited in scope. This case does not involve a general request to search;[9] the expressed object of the search was limited to obtaining Willis' telephone number. It is well established that limited consent for a specific purpose does not operate as consent for a full-scale investigatory search. *Id.*; *Miller v. State*, 393 S.W.3d 255, 268

---

[8]The State relies on *Mendoza-Gonzalez*. In *Mendoza-Gonzalez*, the Fifth Circuit concluded a general grant of consent to search a trailer authorized search of containers within that trailer. *Mendoza-Gonzalez*, 318 F.3d 663. The Fifth Circuit explicitly emphasized, "Mendoza chose not to place any explicit limitations in his response to their general request, which, in this Circuit, is evidence of general consent." *Id.* at 667. In dicta, the Fifth Circuit recognized, "The scope of a consent search may also be limited, if not by the suspect, by the stated object of the search." *Id.* at 668. *Mendoza-Gonzalez* is distinguishable from this case because *Mendoza-Gonzalez* concerned a consent to search not limited by either the request or assent.

[9]Although the State does not explicitly argue that the consent was general, one of the State's arguments could be interpreted in such a manner. The State argues that Flowers could have limited his assent to the request but failed to do so. The State explains, "Had the Appellant wished the search be restricted to the [contacts list], he could have explicitly said so to the detectives; or alternatively he had the opportunity [to] deny consent to search." A scope of consent can be limited both by a limited request or by a limited assent. Although Flowers did not make any explicit limitations in his assent, he only assented to a limited request. The Texas Court of Criminal Appeals has observed, "It is axiomatic that the limit of the right of officers to search is only coextensive with the particular search consented to." *May v. State*, 582 S.W.2d 848, 851 (Tex. Crim. App. [Panel Op.] 1979). Because the officers' request was limited, Flowers' consent was limited by that particular request. Thus, to the extent the State may be arguing that Flowers gave unlimited or general consent, we reject such an argument.

16

(Tex. Crim. App. 2012); *Gilmore v. State*, 666 S.W.2d 136, 149 (Tex. App.—Amarillo 1983, pet. ref'd) (permission to secure property was not equivalent to consent to full investigatory search). When the scope of the consent is limited to a person or an object, the search is also limited to "those areas in which the person or object would reasonably be found." *Valtierra*, 310 S.W.3d at 450.

The expressed object of the search was to obtain Willis' telephone number, and Flowers informed the police exactly where that could be found. While an objectively reasonable person would not expect the search to involve all areas of the phone, an objectively reasonable person would expect the search might include either the contacts list, the call history list, or both such lists. The scope of the search could well be dictated by the familiarity of the person conducting the search with the cell phone owned by Flowers or by the means the names and telephone numbers are displayed on a particular cell phone. The record here shows that the recent call history list shows both the identity of the person called and that person's telephone number. Telephone numbers are often stored or displayed in a cell phone on both the contacts list and on the call history list. A reasonable person might expect a search for a telephone number to include accession of the call history list. In fact, Flowers admits later in the video-recorded interrogation that he uses the call history list to locate telephone numbers.

Flowers argues that his response to the officers' request that the telephone number about which he was asked had been "saved under 'T-Will'" indicates that a reasonable person would expect the search to be limited solely to the contacts list or address book of the cell phone. We disagree. The United States Supreme Court has emphasized that limitations imposed by the

17

defendant in assenting to a request must be explicit. *See Jimeno*, 500 U.S. at 251. Flowers' response to the request contained no such explicit limitation. Although the phrase "saved under" may contemplate a discrete entry stored for permanent, repeated use rather than a temporary chronicle of recent activity (such as a call history log), the phrase is not an explicit limitation and may, instead, point toward other means to locate that same information. An objectively reasonable person could have readily interpreted the response as a helpful suggestion to the person searching the content of the telephone rather than an explicit limitation. The State argues that "[h]ad the Appellant wished the search be restricted to the [contacts list], he could have explicitly said so to the detectives; or alternatively he had the opportunity [to] deny consent to search." Although an objectively reasonable person would not have interpreted the exchange to permit a search of the entire cell phone, an objectively reasonable person could have interpreted the exchange to permit review of the call history list.

The Texas Court of Criminal Appeals has recognized that police officers may seize items under the plain view doctrine when conducting a consensual search. *Miller v. State*, 393 S.W.3d 255, 266 (Tex. Crim. App. 2012). The plain-view doctrine requires "(1) that law enforcement officials see an item in plain view at a vantage point where they have the right to be, and (2) it is immediately apparent that the item seized constitutes evidence—that is, there is probable cause to associate the item with criminal activity." *Martinez v. State*, 17 S.W.3d 677, 685 (Tex. Crim. App. 2000). Because the scope of Flowers' consent gave the officers a legal right to access the call history list, the police officers could seize additional evidence in plain view.

The scope of Flowers' consent included both the contacts list and the call history list. As such, the police officers had a right to access the call history list and could, under the plain view doctrine, seize any additional evidence discovered. The trial court did not err in denying Flowers' suppression objection.

### C. Even if Error, Any Error Was Harmless Beyond A Reasonable Doubt

If the search of Flowers' cell phone by the police exceeded the scope of the consent given by Flowers, it would have been error on the part of the trial court to admit photographs of the cell phone's call list. In an abundance of caution, and adopting the role of the devil's advocate, we also look to determine the impact of a finding that the police exceeded the scope of the consent to search the contents of the cell phone as that consent was extended by Flowers.

Even if the police exceeded the scope of consent, any error in admitting the photographs would be harmless. The admission of evidence seized in violation of the Fourth Amendment is constitutional error subject to the harmless error analysis prescribed in Rule 44.2(a) of the Texas Rules of Appellate Procedure. *See Hernandez v. State*, 60 S.W.3d 106 (Tex. Crim. App. 2001) (error resulting from admission of evidence in violation of Fourth Amendment to be reviewed under Rule 44.2(a)); *Burton v. State*, 339 S.W.3d 349, 365 (Tex. App.—Texarkana 2011, no pet.); *Tijerina v. State*, 334 S.W.3d 825, 835 (Tex. App.—Amarillo 2011, pet. ref'd); *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007); *see Segura v. United States*, 468 U.S. 796, 804 (1984). We must reverse the judgment unless we determine "beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a); *see Clay*, 240 S.W.3d at 904. Error does not contribute to the conviction or punishment if the jury's

verdict would have been the same even if the erroneous evidence had not been admitted. *Clay*, 240 S.W.3d at 904. However, if error has even a "slight effect," it is not, beyond a reasonable doubt, harmless. *Phillips v. State*, 193 S.W.3d 904, 913 (Tex. Crim. App. 2006).

The Texas Court of Criminal Appeals has prescribed several nonexclusive factors to be considered when conducting a harm analysis under Rule 44.2(a), including (1) the nature of the error, (2) the extent the error was emphasized by the State, (3) the weight a juror would probably place on the error, and (4) the error's probable collateral consequences. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011). When conducting a harm analysis in the context of a *Miranda*[10] error, we must "'judge the magnitude of the error in light of the evidence as a whole to determine the degree of prejudice to the defendant resulting from that error.'" *Jones v. State*, 119 S.W.3d 766, 777 (Tex. Crim. App. 2003) (quoting *United States v. Polanco*, 93 F.3d 555, 562–63 (9th Cir. 1996)).

"There is no set formula for conducting a harm analysis that necessarily applies across the board, to every case and every type of constitutional error." *Snowden*, 353 S.W.3d at 822 n.31. These factors "are not exclusive considerations in any particular case," and our inquiry should be "whether, or to what extent, the error may have contributed to the conviction" or increased the punishment. *Id.* at 820–22. The ultimate inquiry is "'whether, assuming that the damaging potential of the [inadmissible evidence] were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.'" *Id.* at 822 n.31 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)). Bearing in mind that these factors

---

[10]*Miranda v. Arizona*, 384 U.S. 436 (1966).

are not the exclusive considerations and that the ultimate inquiry is the damaging potential of the error, we will use the *Snowden* factors to guide our analysis.

The first factor is the nature of the error. If the police erred in making the search of the data as contained on Flowers' cell phone, this would have been a violation of the Fourth Amendment to the United States Constitution. Such a constitutional violation would normally weigh heavily in favor of a finding of harm. However, whether a person had a reasonable expectation of privacy in a cell phone already in possession of the police was, until recently, an unsettled issue of law. Flowers notes in his brief that "[t]he application of the Fourth Amendment to cell phones is a rapidly developing area of the law." Because the law was not clearly settled at the time this search occurred, we conclude this factor only weighs slightly in favor of a finding of harm.

The second factor is the extent that the fruits of the search were emphasized by the State. Although three witnesses testified concerning the cell phone call history, hardly any mention of the call history was made by any of the witnesses, each of them mentioning the call history in only a couple of sentences. Although the issue received considerable attention outside the presence of the jury, the total testimony of all three witnesses to the content of the cell phone call history, if combined, would barely span two pages of an eight-volume reporter's record. The State mentioned the evidence garnered from the search only three times during closing argument. The State argued,

> We know that was a lie because he called him, because Quadreuy Flowers called Tevin Willis at 4:17. . . .
>
> . . . .

21

> . . . . You saw all the phone records where they called each other repeatedly up until the time that he goes and turns himself into the Bi-State, probably because he thought he'd convince Tevin to say that he was with him. . . .
>
>      . . . .
>
> . . . . What does he do? He calls Tevin Willis at 4:17 and says, man, I shot Darius Carter, say I was with you on the Arkansas side.

We disagree with Flowers that these three short references demonstrate that the State emphasized the call history list. Willis, whose name was on the call list and who was the person whom Flowers claimed to have been with that night, testified, saying that Flowers called him the night of the murder and confessed to having committed the murder. The only relevant fact obtained from the cell phone call history list that pertained to the telephone call from Flowers to Willis the night of the murder is the time the call was placed. Although the call history list established that the call was made at 4:17 a.m., Willis did not testify concerning an exact time. We conclude that the State's three references to the call history list during summation was only incidental, without stress on its importance. The call history list played only a minor role in the State's evidence or in the theory of the offense. We conclude that the second factor weighs against a finding of harm.

The third factor is the weight that a juror would likely place on the error. In this factor, we should also consider whether the other evidence showed culpability overwhelmingly as well as the character of the error and how the evidence gleaned from the search might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 359 (Tex. Crim. App. 2002).

22

Flowers argues that the jury gave considerable weight to the data garnered from the call history list, arguing that it eviscerated Flowers' defense because its credibility could not be challenged. Flowers argues that although each of Duckett, McGraw, and Willis had credibility problems, the call history list was unimpeachable and convinced the jury to convict Flowers, despite the lack of any physical evidence against him.

We agree with the State that the probable effect of the error was only minimal. We note that Flowers did not seek to suppress any additional evidence as "fruit of the poisonous tree." As such, our analysis is limited solely to the call history list and the testimony concerning the call history list. Willis' testimony was much better evidence contradicting Flowers' claimed alibi than the call history list; Flowers provided no reason for the jury to disbelieve the testimony given by Willis. It is unlikely the jury gave the call history list much consideration when one considers the consistent testimony of Willis, McGraw, and Duckett. In fact, Flowers recognized the de minimis nature of the call history list in his closing argument. Defense counsel referenced the call history list as follows: "Now, they want you to look at those phone call logs. So what? They show a call." This factor weighs against a finding of harm.

The fourth factor is the error's probable collateral consequences. This factor requires us to "contemplate such things as the disparaging of a sole defense," as well as the probable effect it may have had on punishment. *Higginbotham v. State*, 807 S.W.2d 732, 737 (Tex. Crim. App. 1991). We conclude that any error's probable collateral consequences would be minimal or nonexistent. Although any error in admission of the call history list would disparage Flowers' sole defense, its persuasiveness would be minor when compared to Willis' testimony. As noted

23

above, Willis' testimony was much more destructive to Flowers' alibi than the content of the cell phone's call history list. Any error in this case concerns the evidence on guilt and, once a juror has determined guilt, the evidence is unlikely to have an adverse impact on the harshness of punishment. We conclude the fourth factor weighs against a finding of harm.

After careful consideration of the above factors, we are able to conclude, beyond a reasonable doubt, that any error in admission of the cell phone call list was harmless. Three of the four factors weigh against a finding of harm. Only when considering the nature of the harm does the factor weigh in favor of Flowers' position and even this sole suggestion is only slight. The ultimate inquiry—whether any such error had the potential to damage Flowers—is resolved by determining that any such error was only extremely minimal. Any error by the trial court in admission of the cell phone call history list did not contribute to the judgment in this case.

### III.    The Record Contains Some Basis to Support Court Costs

Flowers' final complaint is that the record does not contain any evidence to support the court costs assessed by the trial court. The original record in this case did not contain a bill of costs, and the State did not request supplementation of the record with a bill of costs. Instead, the State merely argued that the record could be supplemented with a bill of costs.

Although an appellate record cannot normally be supplemented with newly created evidence, the Texas Court of Criminal Appeals and this Court have held that the appellate record can be supplemented with a bill of costs. *See Johnson v. State*, 423 S.W.3d 385, 392 (Tex. Crim. App. 2014); *Allen v. State*, 426 S.W.3d 253 (Tex. App.—Texarkana 2013, no pet.). The Court of Criminal Appeals reasoned that "court costs are not part of the guilt or sentence of a criminal

24

defendant, nor must they be proven at trial." *Johnson*, 423 S.W.3d at 390. However, the State did not attempt to supplement the record in this case with a bill of costs.

*Johnson* rejects any concern that a sua sponte supplementation would be an act of advocacy on behalf of the State. *Johnson* reasons that

> an appellant is not prejudiced by the supplementation of the record under these circumstances because he or she need not object at trial to contest the imposition of court costs on direct appeal, and an appellant has a separate statutory remedy to correct erroneous or unsupportable costs.

*Id.* The court also notes that it had not been directed to any "statutory language or precedential authority, nor [had it] found any, that would prevent a court of appeals from ordering an officer of the trial court to supplement the record with a bill of costs." *See id.* at 391. Thus, *Johnson* suggests that this Court's concurrent general obligation with the parties to ensure an accurate and complete record is filed applies to bills of costs. *See* TEX. R. APP. P. 34.5, 35.3.

We made a sua sponte request that the district clerk supplement the record in this case with a bill of costs. The district clerk filed a document titled "STATEMENT OF COST DUE" which does not appear to qualify as a bill of costs pursuant to Article 103.001 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 103.001 (West 2006). The statement is not signed by the district clerk, and it fails to differentiate between the various fees assessed. Instead of listing all of the court fees individually, the document merely lists the total for the court fees. However, *Johnson* held "that a specific amount of court costs need not be supported by a bill of costs in the appellate record for a reviewing court to conclude that the assessed court costs are supported by facts in the record." *Johnson*, 423 S.W.3d at 395.

25

Lastly, we note that the specific amount in the judgment differs from the specific amount in the document titled "STATEMENT OF COST DUE." Although the judgment specifies $249.00 in court costs, the document titled "STATEMENT OF COST DUE" states that Flowers incurred $234.00 in court costs. Thus, an assessment of only $234.00 in court costs is supported by facts and has some basis in the record. We modify the judgment of the trial court to reflect an assessment of $234.00 in court costs.

## IV.  Conclusion

The trial court did not abuse its discretion in excluding the prior inconsistent statement of a witness because Flowers failed to lay the proper predicate for impeachment of that witness.

The warrantless search of Flowers' cell phone was conducted within the scope of Flowers' consent and, therefore, did not violate the Fourth Amendment.

We note that if Flowers' consent to the search of the cell phone were construed to be limited to the "contacts" list only (the consent not including the call history list), the search of the call history list would have violated the Fourth Amendment constraint against unreasonable searches, rendering the admission of any evidence obtained from it inadmissible as fruit from the poisonous tree. However, any error in admitting the call history list into evidence was harmless beyond a reasonable doubt.

We note that the record as it now stands contains some basis to support an assessment of $234.00 in court costs.

26

We modify the judgment to reflect an assessment of $234.00 in court costs and, as modified, affirm the judgment.

Bailey C. Moseley
Justice

Date Submitted:     February 19, 2014
Date Decided:       June 3, 2014

Publish