

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-21-00098-CR
_____

VANESSA LUCILLLE ALEXANDER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Cass County, Texas
Trial Court No. 2019F00223

Before Morriss, C.J., Stevens and Carter,* JJ.
Memorandum Opinion by Chief Justice Morriss

_____
*Jack Carter, Justice, Retired, Sitting by Assignment

## MEMORANDUM OPINION

Evidence suggests that complainant Debra[1] was around four or five years old when Vanessa Lucille Alexander began sexually abusing her. At some time before her seventh birthday, Debra was placed with another family as part of a CPS[2] investigation. Over the next few years, Debra displayed increasing levels of outbursts and fits, during some of which she exhibited violent seizure-type behavior. In therapy sessions, Debra began to discuss sexual abuse that she claimed Alexander and others inflicted on her. Those circumstances led to an investigation, including two forensic interviews with Children's Advocacy Centers (CACs), first at the Longview CAC in October 2016 and the second at the Texarkana CAC in September 2019. Debra's outcry statement to the forensic interviewer in Texarkana led to Alexander's indictment for continuous sexual assault of a child. A Cass County jury found Alexander guilty of the offense, and the trial court sentenced her to sixty years' imprisonment.

Alexander appeals. We find that (1) the jury charge adequately set out the at-least-thirty-day-separation element of the offense, (2) Alexander failed to preserve her complaint about not receiving transcripts of Debra's two forensic interviews, (3) Alexander failed to preserve her challenges to the constitutionality of the Texas discovery statute, and (4) the trial court did not abuse its discretion in admitting into evidence the recording of Debra's second forensic interview. Therefore, we affirm the trial court's judgment and sentence.

---

[1]To protect the victim's identity and privacy, we refer to her by the pseudonym used in the trial court. *See* TEX. R. APP. P. 9.8(a).

[2]The Texas Department of Family and Protective Services' Child Protective Services Division.

*(1)	The Jury Charge Adequately Set Out the At-Least-Thirty-Day-Separation Element of the Offense*

Alexander claims that the trial court's charge to the jury erroneously failed to require the jury to find that two or more acts of sexual abuse occurred over a period of at least thirty days. We find that the jury charge did adequately charge this element of the offense, and thus, there was no error in the court's instructions.

To obtain a conviction of continuous sexual assault of a child, the State must prove, beyond a reasonable doubt, that the defendant committed two or more acts of sexual abuse over a span of thirty or more days.[3]  The trial court must provide the jury with a charge that instructs the fact-finder on "the law applicable to the case."  TEX. CODE CRIM. PROC. ANN. art. 36.14.  "The purpose of the trial court's jury charge is to instruct the jurors on all of the law applicable to the case."  *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015).  "The application paragraph is the portion of the jury charge that applies the pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations." *Id.*

Alexander complains that the application paragraph in the trial court's charge failed to require the jury to find that two or more of the alleged sexual abuses occurred over a span of thirty or more days.  She cites the following language from the charge's application paragraph:

> To find the defendant guilty of continuous sexual assault of a child, you must determine whether the state has proved, beyond a reasonable doubt, four elements.  The elements are that --

---

[3]*See* TEX. PENAL CODE ANN. § 21.02. (Supp.).  The statute lists various qualifying acts of sexual abuse, age requirements, and other definitions not challenged by Alexander and not relevant to resolution of this issue.

3

> (1) the defendant, in Cass County, Texas, during a period between on or about March 30, 2013[,] and on or before August 7, 2014[,] committed two or more of the . . . alleged acts of sexual abuse[.]

Alexander continues by quoting several paragraphs from the charge, each setting forth the specific elements of various sexual assault offenses.

If the court's charge indicated no more than the above quoted by Alexander, she would be correct, and the charge would have been erroneous. Language such as the above "suggests to the jury that the thirty-day requirement was met if it found Appellant committed two or more acts during a period of thirty days or more" rather than the statute's requirement that two acts "must occur thirty or more days apart." *Turner v. State*, 573 S.W.3d 455, 462–63 (Tex. App.—Amarillo 2019, no pet.).

However, the court's charge said more. A page later, after defining the "four elements" that must be proved beyond a reasonable doubt for the jury to convict Alexander and in advising what matters jurors must agree on unanimously and what they need not agree on, it adds, "With regard to [the timing of the individual acts of sexual abuse], you must all agree that at least thirty days passed between the first and last acts of sexual abuse committed by [Alexander]."

The trial court's application paragraph correctly instructed the jury about the charged offense. Since we find no error in the charge, our analysis is concluded. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).

This point of error is overruled.

4

*(2)    Alexander Failed to Preserve Her Complaint About Not Receiving Transcripts of Debra's Two Forensic Interviews*

Alexander also contends that the trial court erred in failing to provide Alexander with a transcript of the two CAC interviews. However, Alexander did not make this objection to the trial court until she filed a motion for a new trial, about twenty-eight days after the trial court pronounced judgment.

"To be timely, a complaint must be made as soon as the grounds for complaint [are] apparent or should be apparent." *Wilson v. State*, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999) ("Appellant acted untimely by waiting to request a continuance until after jeopardy had attached and both sides had rested their cases-in-chief" where potentially exculpatory evidence had been provided to the Appellant five days before trial). "A defendant may not raise a matter for the first time in a motion for new trial if he had the opportunity to raise it at trial." *Colone v. State*, 573 S.W.3d 249, 260 (Tex. Crim. App. 2019).[4]  Rule 33.1 of the Texas Rules of Appellate Procedure requires a party complaining of some matter or ruling to make a "timely request, objection, or motion" to the trial court that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a).

---

[4]In a motion for new trial, Colone complained about "matters relating to [a] cell-phone data search, plea negotiations, the selection of jurors, and the reconsideration of [a] motion to change venue." *Colone*, 573 S.W.3d at 260. "Because [Colone] had the opportunity to raise the[se] matters . . . at trial, these matters were not timely raised in a motion for new trial." *Id.*

5

If Alexander felt it was important, as part of her defensive strategy at trial, to have transcripts of both CAC interviews, she should have sought those before trial.[5] By asking for them post trial, she did not give the trial court an opportunity to hear her request and grant or deny it. Not only did she not ask the trial court for a transcript, she made no attempt to explain her need for such to the court.

We overrule this point of error.

*(3)* *Alexander Failed to Preserve Her Challenges to the Constitutionality of the Texas Discovery Statute*

In four points of error, Alexander claims that the Texas discovery statute[6] violates the United States and Texas Constitutions.[7] Just as with her argument about transcripts of the CAC interviews, those complaints were apparent to Alexander before trial ended. Therefore, she should have made those arguments to the trial court on a timely basis. Certainly, Alexander presented those arguments to the trial court in a motion for a new trial. But that was still not timely. "A defendant may not raise a matter for the first time in a motion for new trial if [she] had the opportunity to raise it at trial." *Colone*, 573 S.W.3d at 260; *see also Alexander v. State*, 137 S.W.3d 127, 131 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (constitutional objections

---

[5]Whether such transcripts were obtainable is another matter, one not litigated at trial. A CAC interview recording may not be duplicated, reproduced, or copied, provided the "prosecuting attorney makes the electronic recording readily available to the defendant" as required under Article 39.15(d) of the Texas Code of Criminal Procedure. TEX. FAM. CODE ANN. § 264.408(d-1) (Supp.).

[6]*See* TEX. CODE CRIM. PROC. ANN. art. 39.14. (Supp).

[7]Alexander's points of error three and four argue that Article 39.14 of the Texas Code of Criminal Procedure, which governs discovery procedures in Texas criminal matters, violates the United States and Texas Constitutions' rights to counsel, while points five and six claim that the same provision violates Alexander's confrontation rights under both Constitutions. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14.

6

first raised in motion for a new trial failed to satisfy Texas Rule of Appellate Procedure 33.1(a)'s requirement that objections be made timely and at earliest opportunity; objections in motion for new trial were untimely).

Because Alexander could have voiced her challenges to the constitutionality of Article 39.14 to the trial court before or during trial, her complaints in her motion for a new trial were made too late, thus, failing to preserve those arguments for our review. We overrule points of error three, four, five, and six. *See Colone*, 573 S.W.3d at 260.

*(4)* *The Trial Court Did Not Abuse its Discretion in Admitting into Evidence the Recording of Debra's Second Forensic Interview*

Finally, Alexander argues that the trial court erred by admitting the recording of the second CAC interview with Debra.

"We review a trial court's decision to admit or exclude evidence for an abuse of discretion." *Flowers v. State*, 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)). "Abuse of discretion occurs only if the decision is 'so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" *Id.* (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008)) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)). "We may not substitute our own decision for that of the trial court." *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). "We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case." *Id.* (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

7

After Debra testified, the State recalled the Texarkana CAC interviewer Missy Davison. Through her testimony, the State offered the video recording of the second forensic interview conducted by Davison in September 2019. The State argued that Alexander's cross-examination both impeached Debra's testimony and suggested that Debra was inconsistent in her testimony versus the statements she gave in the CAC interview. Ultimately, after entertaining arguments from the parties, the trial court found the recording admissible as a prior consistent statement. In those arguments, Alexander had claimed that admitting the recording would improperly bolster Debra's testimony and was inadmissible hearsay, while the State had claimed that the recording should be admitted for optional completeness and to establish prior consistent statements. The court also reviewed a recent unpublished case from the Tyler Court of Appeals that addressed the admission of a CAC interview recording. In *Cortez Chacon v. State*, No. 12-18-00142-CR, 2019 WL 4727593 (Tex. App.—Tyler Sept. 27, 2019, no pet.) (mem. op., not designated for publication),[8] the reviewing court found that the defense's cross-examination of the complainant emphasized inconsistencies between her testimony and statements made in the forensic interview and suggested she "may have decided to fabricate her testimony." *Id.* at *9.

In Alexander's case, the trial court pointed to cross-examination questioning in which the defense repeatedly asked Debra about matters she discussed in the CAC interview that differed from her trial testimony. Some examples included:

- At trial, Debra described a time at the home of Alexander's boyfriend when Debra was placed on a coffee table, without her underwear, and three or four men were allowed to perform oral sex on her. Defense counsel asked why she had told the

---

[8]Alexander was tried during the last week of January 2020, a few months after the *Chacon* opinion was released.

8

forensic interviewer two men had been present and done this. Debra said she did not remember telling the interviewer there were two men.

- Alexander's counsel asked Debra whether, if a CPS interviewer testified that Debra told the interviewer "no one's ever touched [Debra's] private parts," if that statement would be true, Debra answered it would not be true because she "remember[ed] all the stuff that [Alexander] [had] done."

- Defense counsel followed this question with, "But if the CPS worker says you didn't tell her that, do you think the CPS case worker is lying?" Debra replied, "Well, probably because I didn't tell her because it was uncomfortable telling her because I still loved [Alexander]."

- Referencing a journal purportedly written by Debra,[9] defense counsel asked Debra about a statement, "So I've just come back from the dollar store in Avinger." Debra acknowledged that that was written in the journal but stated unequivocally that she had not in fact gone to that store.

Debra answered many cross-examination questions about the CAC interview by saying she did not remember.

"[T]here need be only a suggestion that the witness consciously altered [her] testimony in order to permit the use of earlier statements that are generally consistent with the testimony at trial." *Hammons v. State*, 239 S.W.3d 798, 804–05 (Tex. Crim. App. 2007) (quoting *United States v. Casoni*, 950 F.2d 893, 904 (3d Cir. 1991)). "[T]hat 'there need be only a suggestion' of conscious alteration or fabrication gives the trial court substantial discretion to admit prior consistent statements under the rule." *Id.* (quoting *Casoni*, 950 F.2d at 904). "There is no bright line between a general challenge to memory or credibility and a suggestion of conscious fabrication, but the trial court should determine whether the cross-examiner's questions or the

---

[9]Alexander asked Debra about a book or journal that she had written, apparently around the time Debra moved to Alabama with her foster parents.

tenor of that questioning would reasonably imply an intent by the witness to fabricate." *Id.* at 805.

The few instances cited above arguably contain some suggestion that Debra fabricated or altered either her statements in the forensic interview or her trial testimony. Also, the trial court discussed the recent opinion issued from the Tyler Court of Appeals, which the trial court had read while considering the parties' arguments. Referring to the *Chacon* opinion, the trial court told the parties, "There, the Court of Appeals said that appellant's manner of questioning suggested to the jury that the child may have decided to fabricate her testimony or that her statements were inconsistent with the forensic interviewer in conjunction with the cross-examination on the same topic."[10]  In noting similarities between Alexander's situation and that in *Chacon*, the trial court specifically referenced Alexander's claim

> that the child ha[d] made inconsistent statements, and in fact, it's specifically suggest[ing] that not only through the use of pointing out the handwriting the child ha[d] made[11] but repeatedly saying that, you know, "You told the forensic interviewer in this interview one thing, and now you're saying something different."

Based on this record, we conclude that the trial court acted with reference to guiding rules and principles, not arbitrarily or unreasonably, in admitting the recording of Debra's CAC interview. Thus, there was no abuse of discretion in that ruling. *See Robbins v. State*, 88 S.W.3d 256, 260 (Tex. Crim. App. 2002) (citing *Montgomery*, 810 S.W.2d at 391)).

This point of error is overruled.

---

[10]Here, it appears the trial court was reading and paraphrasing from *Chacon,* 2019 WL 4727593, at *9.

[11]We assume that here, the trial court was referring to defensive cross-examination about the journal Debra kept and questions by the defense about whether Debra could have made written statements at ages four to five years old, before she had learned to read.

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted: February 28, 2022
Date Decided: May 3, 2022

Do Not Publish