PD-0416-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/20/2015 4:53:36 PM
Accepted 5/22/2015 11:01:53 AM
ABEL ACOSTA
CLERK

APPELLATE COURT No. 03-12-00787-CR

IN THE TEXAS COURT OF CRIMINAL APPEALS

AUSTIN, TEXAS

---

MARK VERNON MOORE
Petitioner

vs.

THE STATE OF TEXAS
Respondent

---

REQUESTING REVIEW OF APPELLATE DECISION FROM THE TEXAS COURT OF APPEALS FOR THE 3RD DISTRICT FROM TRIAL IN THE 22ND JUDICIAL DISTRICT COURT OF HAYS COUNTY, TEXAS

TRIAL CAUSE NUMBER: CR-11-0929

---

PETITION FOR DISCRETIONARY REVIEW

---

FILED IN
COURT OF CRIMINAL APPEALS

May 22, 2015

ABEL ACOSTA, CLERK

STEPHEN N. FOSTER
ATTORNEY-AT-LAW
FOSTER & FOSTER P.L.L.C.
310 SOUTH SAINT MARY'S STREET,
24TH FLOOR
SAN ANTONIO, TEXAS 78205
(210) 222-1200
(210) 222-1253 (fax)
SBN: 24005529

ORAL ARGUMENT REQUESTED    ATTORNEY FOR THE PETITIONER

APPELLATE COURT No. 03-12-00787-CR

IN THE TEXAS COURT OF CRIMINAL APPEALS

AUSTIN, TEXAS

MARK VERNON MOORE
Petitioner
vs.

THE STATE OF TEXAS
Respondent

TABLE OF CONTENTS

TO THE HONORABLE TEXAS COURT OF CRIMINAL APPEALS:

The Petitioner, MARK VERNON MOORE, submits this table of contents

in support of his petition for discretionary review.

# TABLE OF CONTENTS

Table of Interested Parties.................................................................v.

Index of Authorities.....................................................................vi.

Petition for Discretionary Review....................................................1

Oral Argument Requested..............................................................2

Statement of the Case..................................................................3

Statement of Procedural History.....................................................3

Ground for Review.......................................................................4

Argument..................................................................................4

Conclusion and Prayer..................................................................14

Certificate of Service...................................................................16

Verification...............................................................................17

Certificate of Compliance..............................................................18

Appendix Moore v. State (03-12-00787-CR)......................................19

# TABLE OF INTERESTED PARTIES

Honorable Gary Steel
Judge Presiding
22nd District Court
Hays County, Texas

Trial Judge

Ms. Sherri K. Tibbe
Hays County Government Center
712 South Stagecoach Trail
Suite 2057
San Marcos, Texas 78666

Hays County District
Attorney

Ms. Cathy Compton
Hays County Government Center
712 South Stagecoach Trail
Suite 2057
San Marcos, Texas 78666

Hays County
Asst. District Attorney

Ms. Amy Lockhart
Hays County Government Center
712 South Stagecoach Trail
Suite 2057
San Marcos, Texas 78666

Hays County
Asst. District Attorney

Mr. David Mendoza
604 West Hopkins
San Marcos, Texas 78666

Appellant's Trial Counsel

Mr. W. Paul Parash
PO Box 52
San Marcos, Texas 78667

Appellant's Trial Counsel

Mr. Stephen N. Foster
310 South Saint Mary's Street,
24th Floor
San Antonio, Texas 78205

Appellant's Counsel
on Appeal

Texas Court of Appeals for the Third District
209 West 14th Street,
Austin, Texas 78701

Intermediate Court of
Appeal

Table of Authorities

Statute

Tex.Code Crim. Proc. art. 38.05 p. 13

Caselaw

Blue v. State, 41 S.W.3d 129, 132 (Tex. Crim. App. 2000) (plurality opinion) pp. 5, 6, 9, 10, 11, 12, 13, 14

Daye v. State, Not Reported in S.W.3d 2014, 2014 WL 5478150 at 3 n.3 (Tex. App. – Dallas, 2014) p. 11

Drake v. State (--- S.W.3d ----, 2015 WL 2124361 Tex.App.-Hous. (14 Dist.), 2015) p. 13

Garcia v. State Not Reported in S.W.3d, 2014 WL 4437801 (Tex.App.-San Antonio, 2014) p. 8, 9

Maxwell v. State Not Reported in S.W.3d, 2013 WL 6729943 (Tex.App.-Fort Worth, 2013) p. 9, 10

Sanchez-Tapia v. State, Not Reported in S.W.3d, 2015 WL 1119762 (Tex.App.-Amarillo, 2015) p. 11, 12

Starr v. United States, 153 U.S. 614, 626, 14 S.Ct. 919, 38 L.Ed. 841 (1894) p. 13

United States v. Bray, 546 F.2d 851, 859 (10th Cir.1976) p. 9

Unkart v. State, 400 S.W.3d 94, 99 (Tex. Crim. App. 2013) pp. 5, 6, 9, 10, 11, 12, 14

APPELLATE COURT No. 03-12-00787-CR

IN THE TEXAS COURT OF CRIMINAL APPEALS

FOR THE THIRD JUDICIAL DISTRICT

AUSTIN, TEXAS

---

MARK VERNON MOORE
Petitioner

vs.

THE STATE OF TEXAS
Respondent

---

REQUESTING REVIEW OF APPELLATE DECISION FROM THE TEXAS
COURT OF APPEALS FOR THE 3RD DISTRICT FROM TRIAL IN THE 22ND
JUDICIAL DISTRICT COURT OF HAYS COUNTY, TEXAS

TRIAL CAUSE NUMBER: CR-11-0929

---

PETITION FOR DISCRETIONARY REVIEW

To the Honorable Texas Court of Criminal Appeals:

Now comes Mark Vernon Moore, by and through Stephen N. Foster,

Attorney-at-Law, and files this petition for discretionary review in appellate

case number 03-12-00787-CR. On November 9, 2011, the petitioner was

indicted by a Hays County Grand Jury for the Felony offense of Continuous

Sexual Abuse of a Young Child. (C.R. p. 8).

This offense has a minimum sentence of 25 years in the Texas Department of Corrections. The cause number of the instant case in the trial court is CR-11-0929. The petitioner later entered a plea of Not Guilty to the offense and demanded a jury trial. Jury selection began on October 15, 2012 in the 22nd District Court of Hays County, Texas. The Honorable Gary Steel served as presiding judge. On October 25, 2012 the petitioner was convicted of the offense of Continuous Sexual Abuse of a Young Child and was sentenced to life in prison. (C.R. p. 120).

The petitioner subsequently appealed that decision to the Texas Court of Appeals for the 3rd District and the Texas Court of Appeals for the 3rd District affirmed the conviction on March 20, 2013.

## Oral Argument Requested

The issues presented herein are important to Texas jurisprudence and have arisen frequently and are likely to continue to do so. Also, the analysis in this case involves a large number of other cases that have been involved in the analysis of over a decade of Texas law. This involves an area of law that has lacked a solid majority opinion from this Court to guide attorneys

2

and intermediate courts of appeal. Petitioner respectfully requests oral argument.

## Statement of the Case

This case involves the question of whether the Texas Court of Appeals for the 3rd District erred when they affirmed the conviction of the petitioner and whether the petitioner's conviction for Continuous Sexual Abuse of a Young Child should be reversed.

## Statement of Procedural History

The Petitioner was convicted of Continuous Sexual Abuse of a Young Child. This offense has a minimum sentence of 25 years in the Texas Department of Corrections. The cause number of the instant case in the trial court is CR-11-0929. The petitioner later entered a plea of Not Guilty to the offense and demanded a jury trial. Jury selection began on October 15, 2012 in the 22nd District Court of Hays County, Texas. The Honorable Gary Steel served as presiding judge. On October 25, 2012 the petitioner was

3

convicted of the offense of Continuous Sexual Abuse of a Young Child and was sentenced to life in prison. (C.R. p. 120).

The petitioner subsequently filed a notice of appeal (C.R. p. 122) and a motion for new trial. (C.R. p. 123). Petitioner filed a brief with the Texas Court of Appeals for the 3rd District on June 12, 2013. The judgment of the trial court was affirmed by the Texas Court of Appeals for the 3rd District on March 20, 2015. Petitioner now petitions this Court for Discretionary Review of the affirmation of the sentence by the Texas Court of Appeals for the 3rd District.

## Ground for Review

Can statements by a trial judge that are fundamental error but were not objected to by defense counsel be raised on direct appeal and, if so, did the statement in this case rise to that level? (opinion page 15, lines 2-7).

## Argument

This case involves prejudicial statements made by the trial court that were not objected to by trial defense counsel. The Texas Court of Appeals

4

for the 3rd District analyzed the trial court's statements under a theory that "fundamental error is present if the judge's comment 'imparted information to the jury that tainted the presumption of innocence'." (opinion page 15, lines 3-4). The Texas Court of Appeals for the 3rd District also stated that the "district court's comment here does not rise to that level." (opinion page 15, line 5).

The analysis from the Court of Appeals from the 3rd District also stated in regard to the statement, "[t]he comment seems to be nothing more than an attempt by the district court to ascertain whether the venire could consider 'the entire range of punishment' available in the case." (opinion page 15, line 6-7).

Specifically, the trial judge stated:

> The real question that needs to be asked is: Can you consider the entire range of punishment, which is going to be up to life in the penitentiary, no less than five years, a very small possibility that under all of the circumstances probation will be available to this defendant?"

(R.R. v. 2, p. 171).

The cases that the Texas Court of Appeals for the 3rd District used in their analysis were Blue v. State, 41 S.W.3d 129, 132 (Tex. Crim. App. 2000) (plurality opinion) and Unkart v. State, 400 S.W.3d 94, 99 (Tex. Crim. App. 2013).

5

Intermediate appellate Courts in the State of Texas have been citing the case of Blue v. State since this Court made that ruling on December 13, 2000.

Blue is an oft cited opinion and recently this Court in Unkart, as well as several appellate Courts in the last decade, has noted that "Blue is a plurality opinion" and not entitled to precedential value. Unkart, at 101. It is an issue that has come up on numerous occasions in a variety of Texas courts and Texas jurisprudence would be greatly clarified if the principles involved were settled.

Fairly recently, in Unkart v. State, this Court pointed out that the Blue decision has no precedential value. This is because the decision in Blue was a plurality opinion with a concurring opinion, an opinion concurring in the judgment and a justice that simply concurred in the judgment. One common thread that the judgment of the Court and all concurrences shared was that they acknowledged that, even without an objection from counsel, that a trial Court's comments or behavior could be so prejudicial to a defendant that they would warrant a reversal.

In Unkart, this Court pointed out, "[t]he opinions in the Blue case may nevertheless be considered for any persuasive value they might have, in the same way as any other opinion that does not command a

6

majority of this Court, such as a concurring opinion." Id. at 101. This Court pointed out in Unkart:

> With respect to Blue, it is not possible to ascertain a majority holding or the narrowest ground or rule that commands a majority of the court. The rationales of the plurality and concurring opinions are entirely disparate: they did not even focus on the same error, much less give the same reason why it was error.

Id. at 101.

This Court was limited by the facts of Unkart from providing the appellate Courts of Texas concrete guidance regarding when, if ever, a trial Court's actions or comments could constitute fundamental error that would require reversal even without an objection. This is because the Judge's comments in Unkart were not particularly bad.

The statements in Unkart complained about on appeal, but not objected to at trial, were statements about the Judge's personal preference to testify, if he were a Defendant, were part of a much longer series of statements wherein the Judge was emphasizing to the jury that it was not to hold the Defendant's failure to testify against him.

This is not the situation in this case. In this particular case, the Trial Judge stated, "(there is) a very small possibility that under all the circumstances, probation will be available to this Defendant." (R.R. v. 2, p. 171).

7

This statement, taken from the point of view of a juror, or an attorney without a background in Texas criminal law, the statement is devastating to the defense.

When the jury heard this statement the jurors learned two things: 1) the Judge was aware of all the circumstances of this case and 2) there was a very small possibility that, on at least one issue, the Defendant would prevail.

Having been told that a Judge had reviewed all the circumstances of this case and that the Defendant would almost certainly not be getting probation sent a devastatingly strong message to the jury.

As indicated by the appellate court cases that address these issues, it is rare that anti-defendant messages this strong are provided to juries in Texas. In general, the cases in which Blue and, more recently, Unkart, are discussed in this context involve much milder and sometimes even innocuous messages from Judge to jury.

A couple of intermediate Courts of Appeals in Texas have addressed these issues post Unkart. For example, in Garcia v. State, Not Reported in S.W.3d, 2014 WL 4437801 (Tex.App.-San Antonio, 2014), the Fourth Court of Appeals' legal analysis indicated their understanding in the following manner:

8

The question of whether a trial judge's comments can rise to the level of fundamental error was discussed in Blue v. State, 41 S.W.3d 129, 130 (Tex. Crim. App. 2000) (plurality op.). In Blue, "at the beginning of the jury selection process, the trial judge apologized to a group of prospective jurors for their long wait." Id. In doing so, the trial judge informed the jurors the defendant was going "back and forth" deciding whether to accept a plea deal or go to trial. Id. In the presence of the jury, the trial judge also stated he preferred the defendant to plead, and "we were all trying to work toward that and save you time and cost of time." Id. The Court of Criminal Appeals stated the trial judge's "comments 'vitiated the presumption of innocence' before the venire, adversely affecting appellant's right to a fair trial." Id. at 132 (quoting United States v. Bray, 546 F.2d 851, 859 (10th Cir.1976)). A plurality of the court concluded the "comments of the trial judge, which tainted appellant's presumption of innocence in front of the venire, were fundamental error of constitutional dimension and required no objection." Id. at 132.

Garcia v. State, Not Reported in S.W.3d, 2014 WL 4437801, at *2

(Tex.App.-San Antonio, 2014).

For example, Maxwell v. State, Not Reported in S.W.3d, 2013 WL

6729943 (Tex.App.-Fort Worth, 2013) which was decided in the Texas

Court of Appeals for the 2nd District after Unkart, involved a witness being

told that he was "…doing fine" speaking into the microphone. Id. at 4.

In Maxwell, the Texas Court of Appeals for the 2nd District stated:

> Recognizing his lack of objection, and citing Blue
> v. State, Maxwell claims that he was not required to
> object. The Texas Court of Criminal Appeals recently
> held that "the Blue decision has no precedential value."

9

Unkart v. State, 400 S.W.3d 94, 99(Tex.Crim.App.2013). In Unkart, the court reiterated the "traditional and preferred procedure" for preservation of error regarding a trial court's comments. See id. ("Ordinarily, a complaint regarding an improper judicial comment must be preserved at trial."). While leaving the door open that a judicial comment can rise to the level of fundamental error and alleviate the need to follow preferred procedure for error preservation, the Unkart court made it clear that when an instruction to disregard could cure any residual harm from a judicial comment, an appellant forfeits his complaint for review by failing to object and request an instruction. Id.

Maxwell v. State, Not Reported in S.W.3d, 2013 WL 6729943, at *4

(Tex.App.-Fort Worth, 2013).

In contrast, in Daye v. State, Not Reported in S.W.3d, 2014 WL 5478150 (Tex. App. - Dallas, 2014) the Texas Court of Appeals for the 5th District when faced with this issue post Unkart summarily discarded the Appellant's arguments on procedural grounds that the Appellant failed to preserve error, which was relegated to their 3rd footnote:

We reach this conclusion notwithstanding appellant's citation of Blue v. State, 41 S.W.3d 129, 130–31 (Tex.Crim.App.2000) (plurality op.), in which a plurality held that a trial court's comment to the jury panel that (among other things) he would have preferred the defendant plead guilty rather than go to trial struck directly at the presumption of innocence of the defendant, adversely affecting the defendant's right to a fair trial, and was fundamental error of constitutional dimension. Id. at 130, 132. A concurring justice opined that the right at issue was the fundamental right to an impartial judge, and as such, no objection was required. Id. at 138

10

(Keasler, J., concurring). The court of criminal appeals, however, has stated that "the Blue decision has no precedential value." Unkart v. State, 400 S.W.3d 94, 99 (Tex.Crim.App.2013).

Daye v. State, Not Reported in S.W.3d, 2014 WL 5478150, at *3 n.3 (Tex. App. - Dallas, 2014).

Interestingly, in this case in which the petitioner requests review, the "fundamental right to an impartial judge" rationale of Judge Keasler in Blue seems to be the analysis that the Texas Court of Appeals for the 3rd District used to affirm the conviction despite the trial judge's improper statement. In the petitioner's case, the Texas Court of Appeals for the 3rd District analyzed the fundamental fairness of the judge instead of the effect of the Judge's statements on the jury. Specifically, they stated, "[t]he comment appears to be nothing more than an attempt by the district court to ascertain whether the venire could consider 'the full range of punishment' available in the case." (opinion page 15, lines 5-7). This statement focuses on the subjective intent of the trial court and not the objective effect of the statements on the jury.

The Texas Court of Appeals for the 7th District addressed this issue post Unkart as well. In Sanchez-Tapia v. State, Not Reported in S.W.3d, 2015 WL 1119762 at *5 (Tex.App.-Amarillo, 2015), the Sanchez-Tapia Court provided an analysis that indicated that in the event of fundamental error they would provide relief even without an objection, which would

11

indicate a following of <u>Blue</u>.  This occurred despite the fact that they pointed out explicitly that Blue has no precedential value.

> Even if we were to assume arguendo that the trial court's ruling on the objection was a comment on the evidence, we would still be unable to grant appellant the relief he asks for. As stated above, there was no objection to the trial court's ruling. Therefore, the only way the statement is reversible is if it is fundamental error, such as, comments that vitiated the appellant's presumption of innocence. See <u>Blue v. State</u>, 41 S.W.3d 129, 131–32 (Tex.Crim.App.2000) (en banc) (plurality op.). The facts of the Blue case are much more compelling than the facts of the case before the court. In Blue, the trial court apologized to the jury for the delay by telling them that the defendant was still trying to decide whether to take a plea bargain. See <u>id</u>. at 130. Further, the trial court told the jury his personal preference was the defendant plead guilty. See id. Lastly, the trial court informed the jury, "[W]e were all trying to work toward that and save you time and cost of time." See id. Ultimately, a plurality of the Court of Criminal Appeals held that the actions of the trial court amounted to fundamental error and there need not be an objection at trial to gain appellate review of the issue. See <u>id.</u> at 134. Yet, the plurality opinion all agreed on the outcome with almost as many different reasons as judges who participated in the decision. See <u>Unkart</u>, 400 S.W.3d at 99. In the final analysis, the Court of Criminal Appeals has limited Blue to no precedential value and deemed it only to have persuasive value. See <u>id</u>. at 100–01.

In <u>Sanchez-Tapia v. State</u>, Not Reported in S.W.3d, 2015 WL 1119762 at *5 (Tex.App.-Amarillo, 2015)<u>Sanchez-Tapia v. State</u>, Not Reported in S.W.3d, 2015 WL 1119762 at *5 (Tex.App.-Amarillo, 2015).

12

Similarly, on May 15, 2015, The Texas Court of Appeals for the 14th District decided in Drake v. State (--- S.W.3d ----, 2015 WL 2124361 Tex.App.-Hous. (14 Dist.), 2015) that under the specific facts of that case the trial court committed fundamental error. In Drake, the fundamental error was not objected to and, nevertheless, resulted in a reversal. This ruling implicitly indicates that, at least in the 14th District, the type of situation presented in this case can, in some cases, result in a reversal.

Specifically, in Drake, the 14th District Court of Appeals stated:

> The Texas Code of Criminal Procedure provides that a judge cannot "at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case." Tex.Code Crim. Proc. art. 38.05. The trial judge must maintain impartiality throughout the entire case. Blue v. State, 41 S.W.3d 129, 131 (Tex.Crim.App.2000) (plurality op.). The Blue court recognized that the United States Supreme Court has stated, "[i]t is obvious that under any system of jury trials the influence of the trial judge on the jury is necessarily and properly of great weight, and that his lightest word or intimation is received with deference, and may prove controlling." See id. (quoting Starr v. United States, 153 U.S. 614, 626, 14 S.Ct. 919, 38 L.Ed. 841 (1894)). Here, the trial judge's comments to the jury did not reflect impartiality toward Drake's case. The trial judge also made improper comments regarding punishment when it told the jury to "take it out on" Drake during punishment.

Id. at 6.

13

The current state of Texas law, in situations like this, is that Blue has no precedential value but it does have persuasive value. Blue has been cited at least 101 times in Texas and has been the leading Texas case on this issue since it was decided. Interestingly, this remains true to this day in the Texas intermediate Courts of Appeal, even after the Unkart decision was decided, and this Court explicitly stated that Blue had "no precedential value."

Texas jurisprudence would benefit from a clarification of these issues by this Court.

## CONCLUSION AND PRAYER

Wherefore premises considered the petitioner would respectfully request that the Texas Court of Criminal Appeals grant the petitioner's request for discretionary review to consider the issues related to the reversal of the conviction against petitioner and consider reversing the conviction against the petitioner and remanding this case to the trial court or the Texas Court of Appeals for the 3rd District.

14

Respectfully submitted,

Stephen N. Foster
Attorney at Law
Foster & Foster, P.L.L.C.
310 South Saint Mary's Street
24th Floor
San Antonio, Texas
78205
(210) 222-1200
(210) 222-1253 (fax)
SBN 24005529

Attorney for the Petitioner

## CERTIFICATE OF SERVICE

I, Stephen Foster, certify that a true and correct copy of the above and foregoing Appeal was delivered via telecopier to Sherri Tibbe, Criminal District Attorney's Office for Hays County, Texas and the Honorable Gary Steel, presiding judge of the 22nd District Court as well as by mail to the State of Texas at P.O. Box 13046, Austin, Texas, 78711 on Wednesday May 20, 2015.

Stephen Foster, Attorney for Petitioner

16

# VERIFICATION

## STATE OF TEXAS

## COUNTY OF BEXAR

ON THIS DAY personally appeared Stephen Foster, who, after being placed under oath, stated the following:

"My name is Stephen Foster and I am attorney of record for Mark Vernon Moore for purposes of this Petition for Discretionary Review from the Texas Court of Appeals for the 3rd District. I have read the Petition for Discretionary Review and every statement within it is true and correct to the best of my knowledge."

"I further certify that I have reviewed the petition and it is my belief that every factual statement in the petition is supported by competent evidence."

_____
Stephen Foster

Sworn and subscribed before me on ___May 20, 2015___

LEILANI BRAKE
Notary Public, State of Texas
My Commission Expires
May 21, 2018

_____
NOTARY PUBLIC

17

## Certificate of Compliance

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface, specifically Times New Roman 14-point font. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains less than 4,500 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1). All calculations have been done by computer, as allowed by the Texas Rules of Appellate Procedure

Stephen Foster

Sworn and subscribed before me on ___May 20, 2015___

LEILANI BRAKE
Notary Public, State of Texas
My Commission Expires
May 21, 2018

___NOTARY PUBLIC___

28

# Appendix

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00787-CR

**Mark Vernon Moore, Appellant**

v.

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT NO. CR11-0929, HONORABLE GARY L. STEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Mark Vernon Moore of the offense of continuous sexual abuse of a young child and assessed punishment at life imprisonment.[1] The district court rendered judgment on the jury's verdict. In twelve points of error on appeal, Moore challenges the sufficiency of the evidence supporting his conviction; the constitutionality of the statute under which he was charged; rulings and comments made by the district court during jury selection; various evidentiary rulings made by the district court before and during trial; and a comment made by the prosecutor during closing argument. We will affirm the judgment of conviction.

---

[1] *See* Tex. Penal Code § 21.02.

## BACKGROUND

Moore was charged with committing two or more acts of sexual abuse against his stepdaughter, K.M., during a period lasting longer than thirty days, between the dates of June 20, 2008 and June 20, 2011. Evidence considered by the jury during trial, which we discuss in more detail below as it becomes relevant to Moore's issues on appeal, included the testimony of: K.M., who was thirteen years old at the time of trial; officers with the Kyle Police Department who had investigated the offense; Janie Mott, a sexual assault nurse examiner (SANE) who had examined K.M.; Melissa Rodriguez, a forensic interviewer who had interviewed K.M. on two occasions concerning the abuse; relatives of K.M., who testified regarding their observations of Moore's behavior when he was around the child; and several defense witnesses, including Moore. Also admitted into evidence were video recordings of Moore's interview with police prior to his arrest; K.M.'s interviews with Rodriguez; and sexual devices that had been used or exhibited by Moore, according to the State, during his commission of some of the acts of abuse.

The jury found Moore guilty as charged and assessed punishment at life imprisonment. After the district court rendered judgment on the jury's verdict, Moore filed a motion for new trial that was overruled by operation of law. This appeal followed.

**Sufficiency of the evidence**

A person commits the offense of continuous sexual abuse of a young child if, during a time period of thirty or more days, that person commits two or more acts of sexual abuse against a child.[2] An "act of sexual abuse" is an act that violates one or more specified penal laws, among

---

[2] Tex. Penal Code § 21.02(b)(1).

2

them indecency with a child by contact, sexual assault of a child, aggravated sexual assault of a child, and sexual performance by a child.[3] In his first point of error, Moore challenges the sufficiency of the evidence relating to the timing element of the offense. Specifically, Moore asserts that K.M.'s trial testimony is vague and does not include references to specific dates or times when the acts of abuse were alleged to have occurred. As a result, Moore claims, the jury could not have found beyond a reasonable doubt that he had committed two or more separate acts of abuse, occurring more than thirty days apart, during the period charged in the indictment. We disagree.

When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt.[4] We must consider all the evidence in the record, whether direct or circumstantial or properly or improperly admitted.[5] We assume that the jury resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict, and we defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony.[6]

At trial, K.M. testified that she was then thirteen years old and in the eighth grade. She further testified that, when she was in fourth grade, her family, which included her mother, her sister, her maternal grandmother, and Moore, had moved from Indiana to a house on Goldenrod

---

[3] *Id.* § 21.02(c); *see id.* §§ 21.11(a)(1) (indecency with child by contact), 22.011 (sexual assault); 22.021 (aggravated sexual assault), 43.25 (sexual performance by child).

[4] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

[5] *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[6] *Jackson*, 443 U.S. at 318-19; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *Clayton*, 235 S.W.3d at 778; *see* Tex. Code Crim. Proc. art. 38.04.

3

Street in Kyle. K.M. explained that the first incident of sexual abuse occurred at the house on Goldenrod when she was nine years old. She recounted that she and her sister were sleeping with Moore in his bed when he "rolled over" and touched her sexual organ with his hand. K.M. testified to other sexual acts committed by Moore while the family resided at the house on Goldenrod, describing in detail incidents in which Moore showed her a sexual device that belonged to her mother; showed her pornography on his cell phone; entered the bathroom to observe her while she was showering; masturbated in front of her, sometimes while forcing her to touch his sexual organ while he masturbated; and "rubbed" her breasts with his hands.[7]

K.M. testified that when she was eleven, her family moved to a new house in Kyle on Spring Branch Drive, where, she recounted, Moore's acts of abuse increased in frequency and severity. K.M. described a "routine" that Moore established with her in which he would make her come into his room around 3:00 a.m. "[e]very night that [her] mom was gone" at work. K.M. explained that during these encounters, he would sexually abuse her in various ways, and she described these acts in detail and testified that such acts "happened a lot." She recounted that certain acts involving oral sex first occurred when she was eleven and continued "for over a year" until she was twelve and decided to report the abuse. Although K.M. could not recall a specific date when

---

[7] Under section 21.02, any incidents involving contact with K.M.'s breasts are not considered acts of sexual abuse for the purposes of the continuous-sexual-abuse statute. *See* Tex. Penal Code § 21.02(c)(2). Similarly, certain extraneous acts such as showing K.M. pornography are not considered acts of sexual abuse for purposes of the statute. *See id.* § 21.02(c) (defining "act of sexual abuse"). However, the jury may consider these incidents as circumstantial evidence that Moore had engaged in other conduct that could form the basis for his conviction. *See Kuhn v. State*, 393 S.W.3d 519, 526 n.2 (Tex. App.—Austin 2013, no pet.) (citing *Martin v. State*, 335 S.W.3d 867, 876 (Tex. App.—Austin 2011, pet. ref'd) (citing Tex. Code Crim. Proc. art. 38.37)).

4

Moore made her perform oral sex on him, she testified that this was "[b]ecause it happened too much." She testified that he made her do so for "over a year" "up until [she] told" others about the abuse. She explained that she would develop a sore throat "twice a month, at least," during this time period, which she attributed to the frequency in which Moore had made her perform oral sex on him. K.M. further testified that while the family resided on Spring Branch, Moore had performed oral sex on her on multiple occasions; penetrated her with a sexual device; and forced her to take photographs of herself with her breasts exposed.

In sum, contrary to Moore's assertions, K.M. was able to provide specific details regarding the acts of abuse, including where they occurred and her age and grade in school at the time they occurred. Beyond that, moreover, the jury heard other evidence from which it could have reasonably inferred that Moore had committed two or more acts of abuse over a period of thirty days or more. This evidence included two video recordings of forensic interviews of K.M. conducted by Melissa Rodriguez, the program director at the children's advocacy center in San Marcos. These statements generally track K.M.'s trial testimony and, the jury could have reasonably inferred, shed additional light on the time period during which the abuse had occurred. During the first interview, K.M. stated that when she was eleven years old, Moore had penetrated her sexual organ with his sexual organ one time while she was in the bathroom. During the interview, K.M. also described a separate incident that occurred on Valentine's Day when she was eleven years old. K.M. recounted that during this incident, Moore had "knocked" her down onto her bed when she was wearing only a towel and had attempted to penetrate her again. K.M. also told Rodriguez during the interview that Moore had placed his fingers inside her sexual organ "more than ten or twenty times for sure" and made her perform oral sex on him "more than once" and at least "ten or twenty" times. K.M. also

5

described to Rodriguez the most recent incident, which occurred "a couple of weeks or days" before the interview. K.M. explained that Moore had entered her room at night, told her to pull down her pants, and then squeezed her breasts, hurting her. K.M. also stated that Moore had shown her pornographic websites as recently as three or four weeks before the interview. During her second interview with Rodriguez, K.M. provided additional details and described other acts, including Moore forcing her to take showers with him;[8] ejaculating on various parts of her body; and forcing her to perform oral sex on him while he performed oral sex on her.

Janie Mott, the SANE nurse who had examined K.M., also testified, and a copy of Mott's report from the examination was admitted into evidence. The report contained a sexual-assault history given by K.M. to Mott, repeating some of the details summarized above. Among other things, K.M. described how Moore would force her to perform oral sex on him, stating that the last time he had done so "was about a month" prior to the SANE exam. Similarly, K.M. stated to Mott that the last time Moore had put his fingers in her sexual organ was "about 2 weeks ago." Mott testified that her physical examination of K.M. uncovered evidence of trauma to K.M.'s hymen, which Mott found to be unusual because "85 to 95 percent of the time" in cases of child sexual abuse, there is no evidence of trauma.

In summary, the jury could have reasonably found that K.M. was nine years old when the abuse began at the house on Goldenrod and that the abuse continued and intensified when K.M. moved to a new house on Spring Branch when she was eleven years old. In her various accounts, K.M. explained that Moore had committed numerous acts of sexual abuse against her on a "routine"

---

[8] K.M. stated that Moore did this when she was "twelve, eleven, ten. He's done that the whole time."

6

basis "every night" when her mother was at work for a period of "over a year" until K.M. finally reported the abuse in August 2011. Based on the evidence summarized above and all reasonable inferences therefrom, considered in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that Moore committed two or more acts of sexual abuse against K.M. over a span of thirty or more days during the time period specified in the indictment. Accordingly, the evidence is sufficient to support Moore's conviction.[9]

We overrule Moore's first point of error.

## Constitutional challenges to continuous-sexual-abuse statute

In his second point of error, Moore asserts that the continuous-sexual-abuse statute is facially unconstitutional because it permits the jury to convict a defendant without unanimously agreeing on the specific acts of abuse he committed. In his third point of error, Moore further asserts that the statute is facially unconstitutional because it does not provide a defendant with sufficient notice of the particular acts of abuse he is alleged to have committed. However, these complaints are being raised for the first time on appeal. The Court of Criminal Appeals has held that "a defendant may not raise for the first time on appeal a facial challenge to the constitutionality of a statute."[10] Accordingly, Moore has failed to preserve these issues for our review.[11] Moreover, even

---

[9] *See Williams v. State*, 305 S.W.3d 886, 889-90 (Tex. App.—Texarkana 2010, no pet.).

[10] *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009).

[11] *See* Tex. R. App. P. 33.1; *Karenev*, 281 S.W.3d at 434; *Williams*, 305 S.W.3d at 893; *see also Smallwood v. State*, No. 08-12-00215-CR, 2014 Tex. App. LEXIS 9719, at *12-13 (Tex. App.—El Paso Aug. 29, 2014, pet. ref'd) (not designated for publication) (rejecting similar complaints regarding constitutionality of section 21.02 when appellant "made no objection to the trial court about the constitutionality of Section 21.02 nor did he raise any complaint in his motion for new trial"). Moore claims that he preserved error by filing a pretrial motion to quash the

7

if these issues had been preserved below, this Court and others have repeatedly rejected the constitutional challenges to the continuous-sexual-abuse statute that Moore is attempting to raise here,[12] and we would follow that precedent in this case.[13]

We overrule Moore's second and third points of error.

**Jury selection**

Moore's fourth, fifth, and sixth points of error concern rulings and comments made by the district court during the jury-selection process. The trial court has broad discretion over the process of jury selection.[14] Throughout the jury-selection process, "[a] trial court retains discretion to restrict voir dire questions that are confusing, misleading, vague and broad, or are improper

---

indictment, which was denied by the district court following a hearing. However, the motion to quash did not address the constitutional challenges that Moore raises on appeal. Instead, the motion focused on the failure of the indictment to specify the dates on which the acts of abuse allegedly occurred, and this was the only complaint that Moore raised at the hearing on his motion to quash. *See Resendiz v. State*, 112 S.W.3d 541, 547 (Tex. Crim. App. 2003) (in order to preserve error, complaint below must comport with claim raised on appeal).

[12] *See McMillian v. State*, 388 S.W.3d 866, 871-73 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Martin*, 335 S.W.3d at 871-73; *Jacobsen v. State*, 325 S.W.3d 733, 736-39 (Tex. App.—Austin 2010, no pet.); *see also Pollock v. State*, 405 S.W.3d 396, 404-05 (Tex. App.—Fort Worth 2013, no pet.); *Fulmer v. State*, 401 S.W.3d 305, 310-13 (Tex. App.—San Antonio 2013, pet. ref'd); *Kennedy v. State*, 385 S.W.3d 729, 731-32 (Tex. App.—Amarillo 2012, pet. ref'd); *Casey v. State*, 349 S.W.3d 825, 827-30 (Tex. App.—El Paso 2011, pet. ref'd); *Render v. State*, 316 S.W.3d 846, 855-58 (Tex. App.—Dallas 2010, pet. ref'd).

[13] We note that, in his brief, Moore does not cite to or even acknowledge any of the various cases finding the statute to be constitutional. *See* Tex. R. App. P. 38.1(i).

[14] *Fuller v. State*, 363 S.W.3d 583, 585 (Tex. Crim. App. 2012) (citing *Sells v. State*, 121 S.W.3d 748, 755 (Tex. Crim. App. 2003)).

8

commitment questions."[15] Therefore, "[w]e review a trial court's ruling regarding the limitation of voir dire questioning for an abuse of discretion."[16] In this context, "[a] trial court abuses its discretion when it prohibits a proper question about a proper area of inquiry."[17] "A question is proper if it seeks to discover a juror's views on an issue applicable to the case."[18] "However, an otherwise proper question is impermissible if the question attempts to commit the juror to a particular verdict based on particular facts."[19] "In addition, a trial judge may prohibit as improper a voir dire question that is so vague or broad in nature as to constitute a global fishing expedition."[20]

Improper commitment question

In Moore's fourth point of error, he contends that the district court should have allowed him to ask the following question of a prospective juror: "[H]ow do you know—how are you going to know what—if the State has proven its case?" The district court sustained the State's objection to this question on the ground that it called for an improper commitment from the prospective juror.[21] A commitment question is one that commits a prospective juror to resolve, or

---

[15] *Hernandez v. State*, 390 S.W.3d 310, 315 (Tex. Crim. App. 2012) (citing *Barajas v. State*, 93 S.W.3d 36, 38-39 (Tex. Crim. App. 2002)).

[16] *Id.*

[17] *Sells*, 121 S.W.3d at 755-56.

[18] *Id.* at 756.

[19] *Id.*

[20] *Id.*

[21] The district court subsequently allowed Moore to rephrase the question, and Moore did so, explaining to the prospective juror that he was referring specifically to the statutory requirement

9

refrain from resolving, an issue a certain way after learning a particular fact.[22] "[T]he purpose for prohibiting improper commitment questions by either the State or the defendant is to ensure that the jury will listen to the evidence with an open mind—a mind that is impartial and without bias or prejudice—and render a verdict based upon that evidence."[23] "Commitment questions require a venireman to promise that he will base his verdict or course of action on some specific set of facts before he has heard any evidence, much less all of the evidence in its proper context."[24] "[A]lthough commitment questions are generally phrased to elicit a 'yes' or 'no' answer, an open-ended question can be a commitment question if the question asks the prospective juror to set the hypothetical parameters for his decision-making."[25]

In this case, the proposed question asked the prospective juror how he would know if the State had "proven its case," without referencing a "specific set of facts" or establishing "hypothetical parameters" for that decision. Assuming without deciding that this was not an

---

that the State must prove at least two acts of abuse that occurred during a period of thirty days or more.

[22] *Hernandez*, 390 S.W.3d at 315 (citing *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001)).

[23] *Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005).

[24] *Id.*

[25] *Standefer*, 59 S.W.3d at 180 (citing *Allridge v. State*, 850 S.W.2d 471, 480 (Tex. Crim. App. 1991)); *see, e.g., Lydia v. State*, 109 S.W.3d 495, 499 (Tex. Crim. App. 2003) ("[W]hat kind of [criminal] conviction would cause you to have a bias [against the witness]?" considered to be improper open-ended commitment question); *Allridge*, 850 S.W.2d at 480 ("What circumstances in your opinion warrant the imposition of the death penalty?" considered to be improper open-ended commitment question); *Vrba v. State*, 151 S.W.3d 676, 678 (Tex. App.—Waco 2004, pet. ref'd) ("What signs of intoxication in your opinion warrant a conviction for driving while intoxicated?" characterized as example of improper open-ended commitment question).

improper commitment question, we cannot conclude on this record that its prohibition harmed Moore. Any error in prohibiting counsel from asking proper questions during voir dire is generally considered non-constitutional error.[26] Non-constitutional error that does not affect a defendant's substantial rights must be disregarded.[27] To determine whether a defendant's substantial rights were affected, we must assess whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[28] In assessing harm from the denial of a proper question to the venire, we are to examine the record in a manner similar to how we examine the record when assessing harm from erroneous evidentiary rulings.[29] Specifically, we are to consider "'everything in the record, including . . . the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error.'"[30]

Here, Moore asserts that he was harmed because the district court's ruling prevented him from exploring whether the venire members would be willing and able to hold the State to

---

[26] *See Easley v. State*, 424 S.W.3d 535, 536-41 (Tex. Crim. App. 2014); *see also* Tex. R. App. P. 44.2(b). The Court of Criminal Appeals concluded in *Easley* that while there may be cases in which a court's limitation on voir dire is "so substantial" as to rise to the level of a constitutional error, such cases are generally the exception rather than the rule. *See* 424 S.W.3d at 541. The limitation here, involving a single question that Moore was allowed to rephrase, does not rise to that level. *See id.*

[27] Tex. R. App. P. 44.2(b).

[28] *See Rich v. State*, 160 S.W.3d 575, 577-78 (Tex. Crim. App. 2005).

[29] *See Easley*, 424 S.W.3d at 542 (citing *Rich*, 160 S.W.3d at 577-78).

[30] *Id.* (quoting *Rich*, 160 S.W.3d at 577-78).

11

its proper burden of proof. The record does not support this assertion. We observe that, after the district court sustained the State's objection to Moore's question, the district court allowed Moore to rephrase the question in a manner that it did not consider objectionable, and Moore did so by asking the prospective juror if he understood that the State was required to prove beyond a reasonable doubt that Moore had committed two or more acts of abuse during a time period that was at least thirty days in duration. The prospective juror indicated that he understood this requirement.[31] We further observe that, prior to the State's objection, Moore had already discussed the burden of proof with the venire, including the State's obligation to prove its case beyond a reasonable doubt. During the State's questioning of the panel, the prosecutor had also discussed the State's burden of proof and questioned the panel members regarding their understanding of the beyond-a-reasonable-doubt standard and their ability to apply it in this case. Additionally, the jury charge included instructions on the presumption of innocence, the State's burden to prove guilt beyond a reasonable doubt, and how Moore should be found not guilty if the State failed to prove Moore's guilt beyond a reasonable doubt as to each and every element of the offense charged. During closing argument, defense counsel again discussed the State's burden of proof, reminding the jurors that they took an oath "to follow the law and understand that the burden of proof is the highest of any type of case. It's beyond a reasonable doubt." Finally, we observe that the evidence supporting the jury's verdict, which we have summarized above, can be fairly characterized as strong, which mitigates against a

---

[31] *See Woods v. State*, 152 S.W.3d 105, 110 (Tex. Crim. App. 2004) (concluding that trial court's denial of a proper question did not have a substantial or injurious effect or influence in determining jury's verdict because defense counsel was able to ask prospective juror "essentially the same question" after district court sustained objection).

12

finding of harm.[32] On this record, we conclude that any error in sustaining the State's objection to Moore's question would have been harmless.[33]

We overrule Moore's fourth point of error.

Full range of punishment

In his fifth point of error, Moore complains that the district court erred by not permitting him to conduct voir dire on the full range of punishment. Specifically, the district court prohibited Moore from asking the venire questions concerning whether they could consider placing him on community supervision. In this case, we cannot conclude that this was an abuse of discretion. Moore was charged with the first-degree-felony offense of continuous sexual abuse of a child, an offense that carries a minimum sentence of 25 years' imprisonment.[34] A defendant convicted of this offense is not eligible for community supervision.[35] Moreover, because the victim in this case was younger than 14 years of age, Moore would also not have been eligible for community supervision if the jury had acquitted him of the charged offense but convicted him of one

---

[32] *See Easley*, 424 S.W.3d at 542-43.

[33] *See id.* at 541-43; *see also Fuller v. State*, No. 05-09-01099-CR, 2014 Tex. App. LEXIS 7586, at *3-8 (Tex. App.—Dallas July 14, 2014, pet. ref'd) (mem. op. on remand, not designated for publication) (concluding that error in refusing to allow defendant to question venire concerning burden of proof was harmless because there was no indication in record that "the jury was unable to properly apply the beyond a reasonable doubt burden of proof to the evidence before it").

[34] *See* Tex. Penal Code § 21.02(h) ("An offense under this section is a felony of the first degree, punishable by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years.").

[35] *See* Tex. Code Crim. Proc. art. 42.12, §§ 3(e)(1) (defendant not eligible for judge-ordered community supervision if defendant is sentenced to a term of imprisonment that exceeds ten years), 4(d)(1) (defendant not eligible for jury-recommended community supervision if defendant is sentenced to a term of imprisonment that exceeds ten years).

13

of the lesser-included predicate offenses, such as sexual assault of a child.[36] Because community

supervision was not "an issue applicable to the case," we cannot conclude that the district court

abused its discretion in prohibiting voir dire on that topic.[37]

We overrule Moore's fifth point of error.

Alleged comment on the evidence

In his sixth point of error, Moore asserts that the district court judge made an

improper comment to the venire concerning the weight of the evidence. The comment that Moore

considers to be improper is the following:

> The real question that needs to be asked is: Can you consider the entire range of
> punishment, which is going to be up to life in the penitentiary, no less than five years,
> a very small possibility that under all of the circumstances probation will be available
> to this defendant.[38]

Moore argues on appeal that the district court, by indicating that there was only "a very small

possibility" that probation would be available to Moore, improperly conveyed to the venire the

---

[36] *See id.* art. 42.12, §§ 3g(a), 4(d)(5)-(7).

[37] *See Smiley v. State*, 129 S.W.3d 690, 696 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (holding trial court did not abuse discretion in prohibiting voir dire on community supervision where defendant was not eligible for that punishment).

[38] After the district court made this comment, the prosecutor asked to approach the bench and advised the district court that Moore was not eligible for probation in this case. Defense counsel, after discussing the matter with the prosecutor, ultimately agreed that Moore would not be eligible for probation. The district court later clarified its comment, informing the venire, "I do not believe there is any circumstance under which this defendant will be eligible for probation."

14

district court's opinion of Moore's guilt.[39] However, Moore did not object to this comment at the time it was made. Unless a comment rises to the level of fundamental error,[40] "a complaint regarding an improper judicial comment must be preserved at trial."[41] In this context, fundamental error is present if the judge's comment "imparted information to the jury that tainted the presumption of innocence."[42] The district court's comment here does not rise to that level. The comment appears to be nothing more than an attempt by the district court to ascertain whether the venire could consider "the entire range of punishment" available in the case. The comment imparted no information to the venire that "tainted [Moore's] presumption of innocence."[43] Thus, if Moore believed the comment to be improper, he needed to object to it. He did not. Accordingly, the error, if any, has been waived.[44]

We overrule Moore's sixth point of error.

---

[39] *See* Tex. Code Crim. Proc. art. 38.05 (providing that trial court shall not, "at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case").

[40] *See Blue v. State*, 41 S.W.3d 129, 132 (Tex. Crim. App. 2000) (plurality op.).

[41] *Unkart v. State*, 400 S.W.3d 94, 99 (Tex. Crim. App. 2013).

[42] *Blue*, 41 S.W.3d at 132.

[43] *Cf. id.* (trial court revealed to venire that defendant had considered entering into plea agreement and further informed venire that judge would have preferred for defendant to plead guilty; such comments "'vitiated the presumption of innocence' before the venire, adversely affecting appellant's right to a fair trial").

[44] *See* Tex. R. App. P. 33.1(a); *Unkhart*, 400 S.W.3d at 98-102; *Lopez v. State*, 415 S.W.3d 495, 497-99 (Tex. App.—San Antonio 2013, no pet.).

15

**Admissibility of sexual devices**

In his seventh point of error, Moore contends that the district court erred by admitting into evidence various sexual devices that were found during a search of Moore's home. At trial, Moore objected on the ground that proof of the devices was not relevant.[45] The district court overruled that objection.

We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion.[46] A trial court abuses its discretion only when its decision "is so clearly wrong as to lie outside that zone within which reasonable persons might disagree."[47] We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the court's decision if it lies within the zone of reasonable disagreement.[48] If the trial court's evidentiary ruling is reasonably supported by the record and correct on any theory of law applicable to that ruling, we will uphold the decision.[49]

---

[45] *See* Tex. R. Evid. 401, 402. On appeal, Moore additionally contends that the devices were more prejudicial than probative. *See* Tex. R. Evid. 403. Because Moore did not raise this objection in the court below, it is waived. *See* Tex. R. App. P. 33.1(a); *Wood v. State*, 18 S.W.3d 642, 646 n.2 (Tex. Crim. App. 2000); *Brown v. State*, 381 S.W.3d 565, 577 (Tex. App.—Eastland 2012, no pet.); *see also Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) ("[T]he point of error on appeal must comport with the objection made at trial.").

[46] *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Sandoval v. State*, 409 S.W.3d 259, 281 (Tex. App.—Austin 2013, no pet.).

[47] *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)).

[48] *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009); *Sandoval*, 409 S.W.3d at 281.

[49] *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005); *Sandoval*, 409 S.W.3d at 297.

Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."[50] "Evidence which is not relevant is inadmissible."[51]

In this case, it would not be outside the zone of reasonable disagreement for the district court to find that the sexual devices found in Moore's home were relevant. Among other underlying acts of sexual abuse charged in the indictment, Moore was alleged to have intentionally or knowingly caused the penetration of K.M.'s sexual organ with a sexual device. K.M. testified that one of her earliest memories of Moore's abuse was when he had showed her one of her mother's sexual devices, which K.M. described to the jury. In her interviews with Rodriguez, K.M. stated that Moore had explained to her the purpose of the device and asked her if she wanted to use it. K.M. told Moore that she did not want to use it, but he persisted, eventually telling her, "Well, you're going to use it anyways." K.M. testified that while she and Moore were alone in Moore's bedroom, he had used the device to penetrate her. In her videotaped interviews, K.M. told Rodriguez that Moore had retrieved the device from a box in her mother's closet and claimed that her mother had more than one such device in the box. K.M. testified that Moore did not use any of these other sexual devices on her. Detective Diane Talamantes of the Kyle Police Department, one of the investigating officers in the case, testified that during the course of her investigation, she located the sexual devices in the master bedroom closet belonging to K.M.'s mother, which is where K.M. had indicated the devices were located. Talamantes further testified that the devices were consistent with the types of items described by K.M. In his statement to the police, Moore claimed that his wife had

---

[50] Tex. R. Evid. 401.

[51] Tex. R. Evid. 402.

17

only one sexual device, that he did not recall showing K.M. that device, and that he did not use a sexual device on her. On this record, it would not be outside the zone of reasonable disagreement for the district court to find that Moore's use of the sexual devices on K.M. was an issue in the case and that the admission of the sexual devices had a tendency to make Moore's commission of the charged offense more probable than it would be without the evidence.[52] Accordingly, we cannot conclude that the district court abused its discretion in admitting the devices.

We overrule Moore's seventh point of error.

## Prior inconsistent statement

In his eighth point of error, Moore asserts that the district court abused its discretion by not allowing Moore to impeach K.M.'s maternal grandmother, Mary Scott, with a prior inconsistent statement that, according to Moore, would have established that the basis of Scott's testimony was inadmissible hearsay. Scott testified regarding several incidents of inappropriate behavior involving Moore and K.M. that she claimed to have personally observed. Specifically, Scott testified that on one occasion she discovered Moore and K.M. together in a locked bathroom, while K.M. was wearing only a towel. She described another incident in which she walked in on Moore and K.M. laying together in his bed, while K.M. was wearing only her underwear. Finally, she described an incident in which she observed K.M. sitting on Moore's lap and "wiggling" in a

---

[52] *See Brown*, 381 S.W.3d at 578-79 (explaining how sexual devices allegedly used in continuous-sexual-abuse case were relevant and probative of appellant's guilt "because those exhibits contained compelling evidence that made facts of consequence (that the sexual abuse occurred as claimed) more probable" and went "directly toward the series of events" as described by victim).

18

manner resembling a "lap dance." Scott testified that when K.M. stood up, she observed that Moore had an erection.

On cross-examination, Moore attempted to establish that Scott had not personally observed any of the above incidents but instead was repeating what had been told to her by her grandson, C.M.:

Q.          Now you also testified that there was a lap dance that you personally witnessed.

A.          Yes, I did.

Q.          Okay. Did you tell Detective Talamantes that [C.M.] told you about this supposed lap dance?

A.          No, I did not.

Q.          Did you tell Detective Talamantes that [C.M.] had told you about the restroom incident?

A.          No, I did not.

Q.          Did you tell Detective Talamantes that [C.M.] had told you—

[Prosecutor]:          Your Honor, I think this is improper. He's just complaining that there was these statements made without giving her the opportunity to review the statements and deny it.

[Defense counsel]:          It is in the report.

[Prosecutor]:          Ms. Scott did not write a report.

[Scott]:          No.

[Prosecutor]:          This is improper. He needs to do this with Detective Talamantes.

[The Court]:          Yeah. We're getting into—it's improper at this point. Sustained. And I want to be clear. You can ask her what she

19

told the detective. And then if there is an inconsistency there, that's with the detective, not with this individual.

"Rule 613(a) permits a party to impeach a witness with a prior inconsistent statement."[53] However, "before further cross-examination concerning, or extrinsic evidence of, such statement may be allowed, the witness must be told the contents of such statement and the time and place and the person to whom it was made, and must be afforded an opportunity to explain or deny such statement."[54] Thus, in order to establish the proper predicate or foundation for the admissibility of a prior inconsistent statement, the party offering the statement must show: (1) "the contents of such statement"; (2) "the time and place and the person to whom [the statement] was made"; and (3) that the witness was "afforded an opportunity to explain or deny such statement."[55] The purpose of the foundation requirement "is to put the witness on notice as to which statements may be used to impeach her credibility."[56] If a party fails to establish the proper predicate, the trial court does not abuse its discretion in excluding the statement.[57] As with other evidentiary rulings, we review a

---

[53] *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002) (citing Tex. R. Evid. 613(a)).

[54] Tex. R. Evid. 613(a).

[55] *See id.*; *Ellingsworth v. State*, 487 S.W.2d 108, 112 (Tex. Crim. App. 1972); *Flowers v. State*, 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd); *Ferguson v. State*, 97 S.W.3d 293, 296 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).

[56] *Flowers*, 438 S.W.3d at 103 (citing *Joseph v. State*, 960 S.W.2d 363, 366 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd)).

[57] *See, e.g.*, *Moore v. State*, 652 S.W.2d 411, 413 (Tex. Crim. App. 1983); *Ellingsworth*, 487 S.W.2d at 112; *Madry v. State*, 200 S.W.3d 766, 769 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *Osteen v. State*, 61 S.W.3d 90, 91 (Tex. App.—Waco 2001, no pet.).

20

trial court's admission or exclusion of a prior inconsistent statement for abuse of discretion.[58] "As long as the judge's ruling is within the zone of reasonable disagreement, we will not intercede."[59]

Here, it would not have been outside the zone of reasonable disagreement for the district court to conclude that Moore had failed to establish the time and place in which Scott had made the prior inconsistent statement to Talamantes and that this failure confused the witness and prevented her from having proper notice of the statement to which Moore was referring.[60] Because Moore failed to establish the proper predicate for admitting the statement, we cannot conclude that the district court abused its discretion in excluding the statement.[61]

We overrule Moore's eighth point of error.

---

[58] *Lopez*, 86 S.W.3d at 230.

[59] *Id.*

[60] We note that Scott's confusion regarding the statement is evident throughout her testimony. Immediately after the district court sustained the State's objection, Moore asked Scott, "Do you recall your interview with Detective Talamantes?" Scott answered, "Yes, I do. There wasn't one." The district court then asked Scott, "Did you have an interview with her?" Scott answered, "No." Scott later acknowledged that she had met with Talamantes at some point during the investigation and had spoken with her over the phone on at least one occasion, but she maintained that she was unaware of the statement to which Moore was referring and therefore did not know how to answer his questions related to any such statement. On redirect examination, the prosecutor also attempted to clarify the matter with Scott but was unable to do so, as Scott continued to express confusion, at one point testifying, "I don't know. I don't understand. I'm not getting it." Shortly thereafter, the prosecutor remarked to the district court, "This is why, Your Honor, trying to impeach a witness with, you know, a nonexistent report isn't fair because it confuses the witness." At that point, defense counsel responded that he intended to recall Detective Talamantes for the purpose of introducing the report into evidence, and the district court indicated that the report would be admitted, if at all, "when we get the officer in here." However, the detective was never recalled.

[61] *See Madry*, 200 S.W.3d at 769-70.

21

**Outcry witness**

In his ninth point of error, Moore challenges the district court's designation of Melissa Rodriguez, the forensic interviewer who had interviewed K.M. concerning the abuse, as the proper outcry witness in the case. Article 38.072 of the Texas Code of Criminal Procedure, also known as the outcry statute, "creates a hearsay exception for a child's first outcry of sexual abuse to an adult."[62] "The statute applies only to out-of-court statements that (1) 'describe the alleged offense,' (2) are 'made by the child,' and (3) are 'made to the first person, 18 years of age or older, other than the defendant, to whom the child . . . made a statement about the offense.'"[63]

A trial court has "broad discretion" in determining who qualifies as a proper outcry witness, and we review a trial court's designation of an outcry witness for abuse of discretion.[64] As with other evidentiary rulings, we will uphold the trial court's ruling if it is reasonably supported by the record and within the zone of reasonable disagreement.[65] We will find an abuse of discretion only when the trial court's ruling is outside the zone of reasonable disagreement.[66]

---

[62] *Bays v. State*, 396 S.W.3d 580, 581 n.1 (Tex. Crim. App. 2013) (citing Tex. Code Crim. Proc. art. 38.072).

[63] *Id.*

[64] *Garcia v. State*, 792 S.W.2d 88, 91-92 (Tex. Crim. App. 1990); *Rodgers v. State*, 442 S.W.3d 547, 552 (Tex. App.—Dallas 2014, pet. ref'd).

[65] *See Garcia*, 792 S.W.2d at 92; *Polk v. State*, 367 S.W.3d 449, 452 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *see also Martinez v. State*, 178 S.W.3d 806, 810 (Tex. Crim. App. 2005) ("Article 38.072 is a rule of admissibility of hearsay evidence.").

[66] *See McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008); *Polk*, 367 S.W.3d at 452.

Prior to Rodriguez testifying as the outcry witness, Moore objected on the ground that Rodriguez was not the first adult to whom K.M. had described the offense. Instead, according to Moore, that adult was either K.M.'s mother, Cadelia, or K.M.'s biological father, Jesse Rosales. In accordance with the statute, the district court conducted a hearing outside the presence of the jury to determine whether either Cadelia or Rosales were authorized to testify regarding K.M.'s outcry.[67] The only witnesses to testify at the hearing were Cadelia and K.M.[68] Cadelia testified that on June 23, 2011, after being informed by Detective Talamantes of the allegations against Moore, she took K.M. to a park and briefly discussed the matter with K.M. However, Cadelia testified, "I didn't question her. I told her what I was told. She didn't want to talk about it, so I let her go and play with her sister." Cadelia was then asked, "And so over at the park nothing was told to you?" Cadelia answered, "No. I won't force her to talk to me, especially if it's something that's going to make her uncomfortable." Cadelia further testified that at no point prior to June 24—when K.M. was first interviewed by Rodriguez—did she and K.M. discuss the allegations. Cadelia explained, "She didn't want to tell me what happened." Instead, Cadelia recounted, "She had her dad [Rosales] call me and tell me what she had told him." Cadelia testified that she called Rosales and asked him what he had been told. According to Cadelia, Rosales told her that K.M. had told him that Moore had had sex with her, that it was "unprotected," and that "she had been made to perform oral sex on him."

K.M. also testified at the hearing. When asked to recount the conversation with her mother at the park, K.M. testified, "She asked me if [Moore] had been doing anything sexual with me and I told her, 'Yes.' And then she said, 'Okay,' and told me to go back out in the park and play

---

[67] *See* Tex. Code Crim. Proc. art. 38.072, § 2(b)(2).

[68] Rosales, who lived in Ohio, was unavailable to testify.

23

with my sister." When asked if she had told her mother "any of the details" of what had happened between her and Moore, K.M. testified, "No." K.M. was also asked what she had told her father regarding the abuse. She answered, "That Mark had raped me." However, when asked how she had explained the rape to her father, K.M. testified, "I didn't," and she repeated that answer when asked the same question regarding how she had explained it to her mother. When asked if she had told her mother and father various details of the abuse, including whether Moore had penetrated her, used sexual devices on her, and put his fingers inside of her, K.M. repeatedly answered, "No." At one point during her testimony, the district court asked K.M., "[D]id you tell them anything before you went and talked to Ms. Rodriguez?" K.M. answered, "No, I did not." After this testimony, the court ruled that Rodriguez was the proper outcry witness.

On this record, it would not be outside the zone of reasonable disagreement for the district court to find that Rodriguez was the proper outcry witness rather than K.M.'s mother or biological father. Although the statute provides that the proper outcry witness is the "first" adult to whom a child made a statement about the offense, this provision has been interpreted to mean the first adult to whom the child "in some discernible manner describes the offense."[69] The statement must be more than words that give a "general allusion" that something in the area of sexual abuse has occurred.[70] If the initial statement to an adult conveyed nothing more than a "general allusion" of abuse, then the recipient of a subsequent, detailed statement should be designated as the outcry witness, even though that person technically was not the first adult to whom the child revealed the

---

[69] *See Garcia*, 792 S.W.2d at 90-91; *Michell v. State*, 381 S.W.3d 554, 558 (Tex. App.—Eastland 2012, no pet.).

[70] *See Garcia*, 792 S.W.2d at 91; *Michell*, 381 S.W.3d at 558.

24

offense.[71] Given the testimony summarized above, it would not be outside the zone of reasonable disagreement for the district court to find that K.M.'s statements to her mother and biological father were general allusions that sexual abuse had occurred and were not specific descriptions of the offense charged as required by article 38.072.[72] The charged offense—continuous sexual abuse of a young child—in addition to requiring proof of some type of sexual abuse, also requires proof that two or more acts of sexual abuse were committed during a period that is thirty days or more in duration. Article 38.072 requires a description of the "offense," but the information K.M. related to Cadelia and her biological father, the district court could have reasonably found, did not touch upon the timing element of the charged offense or the number of times the acts of abuse occurred.[73] The district court also could have reasonably found that Rodriguez was the first adult witness to whom K.M. had provided a description of multiple acts of sexual abuse over an extended period of

---

[71] *See Garcia*, 792 S.W.2d at 91 (initial statement that "something happened at home, and that it had to do with abuse" was "general allusion," insufficient to designate first adult as outcry witness"); *Thomas v. State*, 309 S.W.3d 576, 579 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (initial statement to victim's mother that defendant had touched her "private parts" did not describe incident with specificity and trial court could have reasonably determined that statement was nothing more than general allusion); *Sims v. State*, 12 S.W.3d 499, 500 (Tex. App.—Dallas 1999, pet. ref'd) (same); *see also Robinett v. State*, 383 S.W.3d 758, 761-62 (Tex. App.—Amarillo 2012, no pet.); *Michell*, 381 S.W.3d at 558-59; *Broderick v. State*, 35 S.W.3d 67, 73 (Tex. App.—Texarkana 2000, pet. ref'd); *Foreman v. State*, 995 S.W.2d 854, 858-59 (Tex. App.—Austin 1999, pet. ref'd) (collecting cases).

[72] *See, e.g.*, *Michell*, 381 S.W.3d at 559-60 (holding child's statements to police that her "mom made her put her hands up in her," "her dad put his middle part up in her," her parents "touched her in her private areas" and that her "dad put his male parts inside of her" were general allusions to sexual abuse whereas child's statement to forensic interviewer provided the "how, when, and where" of the abuse and therefore that trial court did not err in designating forensic interviewer as outcry witness); *Thomas*, 309 S.W.3d at 579; *Sims*, 12 S.W.3d at 500.

[73] *See Michell*, 381 S.W.3d at 559-60 (observing that initial statements to police did not provide detail regarding timing element of offense of continuous sexual abuse of young child).

25

time, which is what is required to constitute the charged offense. On this record, we cannot conclude that the district court abused its discretion in finding that Rodriguez was the proper outcry witness.[74]

We overrule Moore's ninth point of error.[75]

## Question regarding truthfulness

During K.M.'s testimony, the prosecutor asked her the following question: "[K.M.], have you told this jury the truth today?"[76] K.M. answered, "Yes." After K.M. had answered the question, Moore objected. The district court overruled the objection. In his tenth point of error, Moore asserts that the testimony invaded the province of the jury to determine witness credibility and provided improper evidence of K.M.'s character for truthfulness.[77]

Moore failed to preserve error on this point. A timely objection to the admission of evidence is required to preserve error on appeal.[78] An objection is timely if made at the earliest

---

[74] *See* Tex. Code Crim. Proc. art. 38.072, § 2(a); *Garcia*, 792 S.W.2d at 91-92; *Thomas*, 309 S.W.3d at 579.

[75] In this issue, Moore also briefly asserts, without elaboration or citation to authority, that K.M.'s outcry statement to Rodriguez was not reliable. This complaint was not preserved below. *See* Tex. R. App. P. 33.1(a). Moreover, even if the complaint had been preserved, we could not conclude on this record that the district court abused its discretion in finding the statement to be reliable. *See Torres v. State*, 424 S.W.3d 245, 257-59 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (discussing factors to be considered in analyzing reliability of outcry statement).

[76] This question was asked prior to Moore's cross-examination of K.M.

[77] *See* Tex. R. Evid. 404(a), 608(a); *see also Wills v. State*, 867 S.W.2d 852, 855-56 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) ("Are you telling the truth here?" held to be improper question under Rules 404 and 608); *Caldwell v. State*, 696 S.W.2d 606, 608 (Tex. App.—Beaumont 1985, pet. ref'd) ("To allow a witness to answer self-serving questions such as 'have you told this jury the truth' . . . is not proper.").

[78] Tex. R. App. P. 33.1(a)(1).

26

opportunity or as soon as the grounds for the objection become apparent.[79] It is well established that "if a defendant fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely, and any claim of error is forfeited."[80] Here, the answer that the prosecutor expected to elicit from the witness should have been immediately apparent to Moore at the time the objectionable question was asked, but Moore did not object until after the witness had already answered the question. Moore provides no explanation for his delay. Accordingly, the error, if any, has been waived.

Moreover, even if we were to assume that Moore's objection had been timely, and were to further assume that the district court should have sustained the objection, we could not conclude on this record that Moore was harmed. We have already detailed the evidence presented to the jury, including the two statements made by K.M. to Rodriguez as well as her trial testimony. In her three separate accounts of the abuse, K.M. recounted in detail multiple instances of sexual abuse at the hands of Moore over a period of years. The jury was able to directly observe K.M.'s demeanor during these accounts and make its own determination regarding K.M.'s credibility. The district court also admitted physical evidence that corroborated K.M.'s accounts of what had happened, including evidence that K.M. had experienced trauma to her hymen, as well as a collection of sexual devices, matching descriptions given by K.M. of devices that Moore had exhibited to or

---

[79] *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011); *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006).

[80] *Luna v. State*, 268 S.W.3d 594, 604 (Tex. Crim. App. 2008); *see Lagrone v. State*, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997); *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995); *Sandoval*, 409 S.W.3d at 306.

27

used on her. Based on our review of the record as a whole, we have fair assurance that any error in admitting the challenged testimony did not influence the jury or had but a slight effect.[81]

We overrule Moore's tenth point of error.

## Motion to suppress

In his eleventh point of error, Moore argues that the district court abused its discretion in denying his motion to suppress the statement that he made to police officers prior to his arrest. The basis of his motion to suppress was that he was in custody at the time he had provided the statement, and that during the interview, the police had denied him his right to counsel pursuant to *Miranda*.[82] At the hearing on the motion to suppress, Moore was the only witness to testify. A video recording of the interview was also admitted into evidence, which the district court subsequently reviewed. After taking the matter under advisement, the district court denied the motion to suppress. No written findings of fact or conclusions of law were requested or made.

We review a trial court's ruling on a motion to suppress for abuse of discretion.[83] "The record will be viewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable

---

[81] *See* Tex. R. App. P. 44.2(b).

[82] *See Miranda v. Arizona*, 384 U.S. 436, 466-67 (1966); *see also* U.S. Const. amend. V; Tex. Code Crim. Proc. art. 38.22, § 3(a)(2); *Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007).

[83] *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014); *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

28

disagreement.'"[84] When there are no written findings explaining the factual basis for the trial judge's decision, we imply findings of fact that support the court's ruling so long as the evidence supports those implied findings.[85] "The appellate court must apply a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but applying a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations."[86]

In this case, the dispositive question is whether Moore was in custody at the time he provided his statement, because if he was not in custody, he had no right to counsel pursuant to *Miranda*.[87] The rights set out in *Miranda* are triggered only when a person is subject to "custodial interrogation."[88] "Custodial interrogation" is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."[89] The defendant bears the burden of proving that a statement was the product of a custodial interrogation.[90] To determine whether an individual is in custody, a court

---

[84] *Story*, 445 S.W.3d at 732 (quoting *Dixon*, 206 S.W.3d at 590; *Montgomery*, 810 S.W.2d at 391-92).

[85] *Meekins v. State*, 340 S.W.3d 454, 461 (Tex. Crim. App. 2011) (citing *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007)).

[86] *Martinez*, 348 S.W.3d at 922-23 (citing *Guzman v. State*, 955 S.W.2d 85, 87-89 (Tex. Crim. App. 1997)).

[87] *See Miranda*, 384 U.S. at 478; *Estrada v. State*, 313 S.W.3d 274, 296 (Tex. Crim. App. 2010).

[88] *See Miranda*, 384 U.S. at 442-57, 467-79.

[89] *Id.* at 444.

[90] *See Herrera*, 241 S.W.3d at 526.

29

must first examine all of the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."[91] The determination of custody depends on the objective circumstances of the interrogation, not the subjective views of the person being questioned or the subjective intent of the officer to arrest or not arrest.[92] After the circumstances surrounding the interrogation are considered, the court must determine whether, "given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave."[93] The "reasonable person" standard presupposes an innocent person.[94]

At the suppression hearing, Moore testified that the police called him on his cell phone and asked if he would come to the police department for an interview. Moore agreed, and drove himself to the department in his own vehicle. Once he arrived, he recounted, he had to "wait for a little bit" in the "lobby area" of the department. Eventually, Talamantes met him in the lobby area, patted him down,[95] and took him to what Moore described as a "tiny" interrogation room, "about ten by ten [feet], maybe." Moore testified that Talamantes was not wearing a uniform during

---

[91] *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam))); *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996); *Bartlett v. State*, 249 S.W.3d 658, 668 (Tex. App.—Austin 2008, pet. ref'd).

[92] *Stansbury*, 511 U.S. at 323; *Dowthitt*, 931 S.W.2d at 254; *Bartlett*, 249 S.W.3d at 669.

[93] *Thompson v. Keohane*, 516 U.S. 99, 112 (1995); *see also Herrera*, 241 S.W.3d at 532.

[94] *Dowthitt*, 931 S.W.2d at 254 (citing *Florida v. Bostick*, 501 U.S. 429, 438 (1991)); *Bartlett*, 249 S.W.3d at 669.

[95] The purpose of the pat-down, according to Moore, "was just to make sure I didn't have any weapons in my waistband or my socks or anything."

30

the interview but was wearing her badge and a sidearm. Moore further testified that he was not permitted to bring anything into the interview room, including a cane that he used to assist him in walking.[96] Moore claimed that the door was locked during the interview and that when Talamantes wanted to leave the room, she had to wait for another person to let her out. Moore testified that he was not given his *Miranda* warnings at any point during the interview. He also claimed that at some point during the interview, he told Talamantes, "I would like to have an attorney," but she did not respond to his request. According to Moore, "it was implied" to him at some point during his interview with Talamantes that the police already had enough evidence to arrest him. Moore testified that after Talamantes finished speaking with him, a second officer entered the room and proceeded to interview him. After that interview was concluded, Moore explained, he was "allowed to leave." He added, "I gave them my cell phone number and I took their phone number so we could contact each other."

The video recording of the interview, the district court could have reasonably found, is not entirely consistent with Moore's account of what had occurred. The tape depicts that, after Moore seated himself in the interrogation room, Detective Talamantes entered the room and stated that she would have to set his cane outside the room. Moore gave her his cane and Talamantes set it outside, re-entered the room, and closed the door. Nothing in the video indicates that the door was locked at that time. Talamantes then advised Moore that he was not under arrest, that he was free to leave at any time, and that the interview was voluntary. The interview then began. Near the

---

[96] Moore's use of the cane appears to be related to a back injury that he had suffered. Moore testified during the hearing that he was on pain medication for "three bulging disks and one ruptured disk that was surgically repaired."

31

end of the interview, Talamantes questioned Moore regarding his willingness to take a lie detector test, at which point Moore asked her, "[I]s that something that I need anybody else here for?" Talamantes responded, "That's up to you if you, I mean—you aren't taking it now. We'd set you up for it." Moore replied, "Okay. Well, I just want to know cause I, you know I'm watching my life just disappear on me here." Talamantes then instructed Moore to "hang on" and exited the room. Nothing in the video indicates that she had to unlock the door or that the door was unlocked for her by another person prior to her exit. Contrary to what Moore claimed in his testimony, at no point during his interview with Talamantes did he ask for an attorney.

The recording of the interview further showed that, several minutes after Talamantes had exited the room, Sergeant Jacob Luria entered the room and proceeded to interview Moore. During this interview, Moore received a call on his cell phone from his wife. Sergeant Luria exited the room while Moore took the call and spoke with his wife for several minutes. When Moore finished his call, Luria returned and the interview resumed. Near the conclusion of the interview, Luria stated, "Before you walk out of here, cause you know it's completely voluntary like we said and I think we're coming kinda towards the end here. Before you walk out of here, I want you to take a second, cause once you walk out that door, that opportunity kinda goes away and then we have to do what we have to do." Shortly thereafter, the following exchange occurred:

Luria:      I don't think we have too much more to discuss because I've asked
            you point blank and yet everything about you shows me that all you
            want to do is have someone tell you that the best thing to do is to just
            say it. This is what happened.

Moore:      Are you saying that I need a lawyer? I mean is that what—

Luria:      I don't give legal advice. I mean, that's up to you.

32

Moore:      Well, that's not really legal advice. I mean, I was just saying—

Luria:      Well, that's up to you. I mean that's why you're here voluntarily. You're not in custody.

Moore:      Yeah.

Luria:      So, I don't advise whether or not someone does or not. We're not even talking about that. What we're talking about is the mental health of your daughter.

At the conclusion of the interview, Moore asked Luria if he was free to leave Texas and return to Indiana, where some of his family lived. Luria replied that he could not prevent Moore from leaving the state, but he suggested that Moore remain in Texas until his case was resolved. Moore then asked if he "would be looking at charges." Luria responded that he would have to discuss the matter with his supervisor. Moore was then permitted to leave the police department. Approximately two hours elapsed between the time Moore entered the interview room and the time he left.

Although there are some objective circumstances summarized above that might support a finding that Moore was in custody, there are other objective circumstances supporting the district court's finding that he was not. The circumstances that support the district court's finding include the following: (1) rather than appear at Moore's residence, the police called Moore and requested an interview; (2) Moore drove himself to the police department in his own vehicle; (3) Moore was allowed to wait in the lobby area of the police department before being interviewed; (4) although Moore was patted down and could not have his walking cane with him in the interview room, he was allowed to bring in his cell phone; (5) Moore seated himself in the interview room, and was seated close to the door; (6) although the door was closed during the interview, there was no

indication on the video recording that the door was actually locked as Moore claimed; (7) during the interview, Moore was left alone in the room on two occasions, including on one occasion when he was allowed to take a phone call from his wife that lasted several minutes; (8) both Talamantes and Luria informed Moore that he was free to leave at any time and that he was not under arrest at that time; (9) Moore was not in handcuffs or any other physical restraints during the interview; (10) at the conclusion of the interview, Moore was allowed to leave the department.

Viewing the above evidence in the light most favorable to the district court's ruling, we conclude that the record supports the district court's implied finding that Moore was not in custody during his interview with the police.[97] Therefore, the *Miranda* requirements, including the right to counsel, were not triggered during the interview.[98] Accordingly, we cannot conclude that the district court abused its discretion in denying Moore's motion to suppress his statement.

We overrule Moore's eleventh point of error.[99]

---

[97] *See, e.g., Beheler*, 463 U.S. at 1121-25; *Mathiason*, 429 U.S. at 493-95; *Estrada*, 313 S.W.3d at 288-95; *Gardner v. State*, 306 S.W.3d 274, 293-95 (Tex. Crim. App. 2009); *Meek v. State*, 790 S.W.2d 618, 619-23 (Tex. Crim. App. 1990); *see also Garcia v. State*, No. 03-10-00364-CR, 2011 Tex. App. LEXIS 6500, at 20-28 (Tex. App.—Austin Aug. 17, 2011, pet. ref'd) (mem. op., not designated for publication) (providing analysis on factors that do and do not support finding of custody and concluding that record in that case supported trial court's finding that appellant was not in custody); *Bartlett*, 249 S.W.3d at 667-71 (distinguishing custody from other citizen-police interactions); *Rodriguez v. State*, 939 S.W.2d 211, 215 (Tex. App.—Austin 1997, no pet.) ("In reviewing the trial court's decision [on suppression], an appellate court does not engage in its own factual review; it determines only whether the record supports the trial court's findings.").

[98] *See Estrada*, 313 S.W.3d at 296.

[99] In this issue, Moore also asserts that his statement was involuntary. This argument was not raised at the suppression hearing, but even if it had been, we could not conclude on this record that it had merit. Moore testified at the suppression hearing that he could not recall how long the interview lasted because he was "heavily medicated" on pain medication at the time, but he provided no testimony tending to show that this medication somehow rendered his statement involuntary or not the product of his own free will. Nor did he provide any testimony or other evidence tending to

34

**Improper argument**

In his twelfth point of error, Moore asserts that the district court abused its discretion by overruling his objection to an allegedly improper comment made by the State during its closing argument. The comment to which Moore objected was the following: "A lot of times defense attorneys will try to say, 'Well you know, if she's a victim she should have acted like one.'"

We review a trial court's ruling on an objection to improper jury argument for abuse of discretion.[100] Permissible jury argument falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement.[101] Comments on matters outside the record are generally considered outside the permissible areas of jury argument.[102]

Assuming without deciding that the prosecutor's argument referred to a matter outside the record and was thus impermissible, we cannot conclude on this record that Moore was harmed by the argument. Prosecutorial comments on matters outside the record are to be disregarded unless they affect a defendant's substantial rights.[103] A defendant's substantial rights are not affected by an improper jury argument unless, "in light of the record as a whole, the argument is extreme or

---

show that the officers coerced or forced him in any way to make the statement. On this record, we could not conclude that the district court would have abused its discretion in finding Moore's statement to have been voluntarily obtained. *See Arizona v. Fulminante*, 499 U.S. 279, 285-86 (1991); *Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007).

[100] *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004); *Nzewi v. State*, 359 S.W.3d 829, 841 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

[101] *See Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007).

[102] *See Martinez v. State*, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000).

[103] *Id.*; *see* Tex. R. App. P. 44.2(b).

manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding."[104] For the argument to rise to the level of reversible error, "[t]he remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial."[105] In this context, "[w]e conduct a harm analysis using the following three-factor test: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and, (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)."[106]

Considering the prosecutor's comment in light of the above factors, we cannot conclude that Moore was harmed here. First, the prosecutor's comment was not severe. It was merely a generalized reference to what defense attorneys in other cases "will try to say" concerning the conduct of the victim. The comment does not appear to have been "a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial."[107] We observe that the vast majority of the prosecutor's argument was devoted to summarizing the evidence in the case and responding to the evidence presented by Moore relating to K.M.'s conduct, which are permissible areas of jury argument.

Regarding the second factor, because the district court overruled the objection, no instruction to disregard or other curative measures were adopted to cure the alleged misconduct.

---

[104] *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).

[105] *Id.*

[106] *Gallo*, 239 S.W.3d at 767; *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

[107] *See Wesbrook*, 29 S.W.3d at 115.

36

This factor weighs in Moore's favor.[108] However, the third factor weighs in the State's favor. As we have already detailed elsewhere in our opinion, the evidence supporting the conviction in this case can be fairly characterized as strong. Based on the strength of the State's case, combined with the relatively mild nature of the allegedly improper comment, we have fair assurance that the comment did not have a substantial or injurious effect or influence in determining the jury's verdict. Accordingly, we cannot conclude on this record that Moore was harmed.[109]

We overrule Moore's twelfth point of error.

## CONCLUSION

We affirm the district court's judgment of conviction.

_____

Bob Pemberton, Justice

Before Chief Justice Rose, Justices Pemberton and Bourland

Affirmed

Filed: March 20, 2015

Do Not Publish

---

[108] *See Mosley*, 983 S.W.2d at 260.

[109] *See* Tex. R. App. P. 44.2(b); *Mosley*, 983 S.W.2d at 260.

37